366 N.E.2d 195 (1977)
BOARD OF AVIATION COMMISSIONERS OF CLARK COUNTY, Indiana, Plaintiff-Appellant,
v.
Marie SCHAFER, Defendant-Appellee.
No. 1-1276 A 257.
Court of Appeals of Indiana, First District.
August 16, 1977.
Rehearing Denied September 27, 1977.
*196 Ernest W. Smith, Fox & Smith, Jeffersonville, for plaintiff-appellant.
Charles W. Hoodenpyl, Jr., Jeffersonville, for defendant-appellee.
LOWDERMILK, Judge.

STATEMENT OF THE CASE
Plaintiff-appellant Board of Aviation Commissioners of Clark County, Indiana (Board) commenced condemnation proceedings against Defendant-appellee Marie Schafer, owner of 81 acres of land which was part of the land upon which an airport for Clark County was to be built. Prior to the introduction of any evidence the Board made a motion pursuant to Ind.Rules of Procedure, Trial Rule 52(A), wherein it asked the court to make special findings of fact and conclusions of law. At the close of the Board's evidence the trial court granted Schafer's motion for involuntary dismissal, which was made pursuant to Ind.Rules of Procedure, Trial Rule 41(B) and entered findings of facts and conclusions of law pursuant to TR 52(A).
We reverse.

FACTS
The Board of Aviation Commissioners of Clark County is an executive department of Clark County, Indiana, and is authorized by law to acquire, establish, construct, maintain, improve, and operate airports. The Board has the power of eminent domain.[1] The Board is preparing to construct an airport in Clark County, which would encompass the land owned by Schafer. The Board's negotiations with Schafer for the purchase of her land began in September, 1971. When it was apparent that no mutually agreeable purchase price could be determined, the Board authorized its attorney to commence condemnation proceedings in November, 1971.
The Board made other attempts to negotiate a sale with Schafer. Finally, in June 1974 the Board filed suit to condemn Schafer's property. After suit was filed the Board renewed its offer to purchase Schafer's 81 acres of land for $164,000, or approximately $2,025.00 per acre, an offer which Schafer continued to refuse.

ISSUES
The issues which we have been asked to review are as follows:
1. Whether the trial court erred in granting Schafer's motion for involuntary dismissal, which was made pursuant to TR 41(B).
2. Whether the trial court erred in granting Schafer's motion for payment or reimbursement of litigation expenses, including attorney's fees.
For the reason that we have determined that the trial court committed reversible error, it is not necessary for us to discuss any other alleged error.

DISCUSSION AND DECISION

Issue One
The Board contends that the trial court erred by weighing the evidence in making its decision to grant Schafer's motion for involuntary dismissal at the close of the *197 Board's evidence. The Board contends that if the court had considered the evidence in a light most favorable to the Board, as the court was required to do by TR 41(B), the court could not have properly granted Schafer's motion for involuntary dismissal. We agree.
TR 41(B) provides:
"(B) Involuntary dismissal: Effect thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." (Our emphasis)
In reference to TR 41(B) the court in Building Systems, Inc. v. Rochester Metal Products, Inc. (1976), Ind. App., 340 N.E.2d 791 at 793 stated:
"The language of this rule requires the trial court to consider only the evidence and inferences most favorable to the non-moving party in ruling upon such a motion. The trial court may not weigh the testimony of one witness against the conflicting testimony of another witness, nor may it weigh conflicting portions of the testimony of the same witness. Ohio Casualty Ins. Co. v. Verzele et al. (1971), 148 Ind. App. 429, 267 N.E.2d 193. Thus, our Trial Rule 41(B), supra, differs from Federal Rule 41(b) in that under the Federal Rule the trial court need not consider only the evidence and reasonable inferences therefrom most favorable to the non-moving party, but is free to determine whether the plaintiff (or party with the burden of proof) has established a right to recovery by a preponderance of the evidence during his case-in-chief. Emerson Electric Co. v. Farmer (5th Cir., 1970), 427 F.2d 1082; Ellis v. Carter (9th Cir., 1964), 328 F.2d 573, 577; Motorola, Inc. v. Fairchild Camera and Instrument Corp. (DC Ariz., 1973), 366 F. Supp. 1173, 1176. See also: 9 Wright and Miller, Federal Practice and Procedure, § 2371, at 224-225; Moore's Federal Practice, Vol. 5, § 41.13[4], 1155-60."
Schafer agrees that, where a defendant has moved for involuntary dismissal under TR 41(B) at the close of the plaintiff's evidence, the court must consider the evidence and the reasonable inferences therefrom in a way which is most favorable to the plaintiff. However, Schafer contends that, where, as in the case at bar, a party has requested the court to make special findings of fact pursuant to Ind.Rules of Procedure, Trial Rule 52(A), either before the introduction of any evidence or at the time of the motion for involuntary dismissal pursuant to TR 41(B) at the close of the plaintiff's evidence, the court may weigh the evidence and judge the credibility of witnesses in making its rulings and findings upon the respective motions. We do not agree with Schafer's contention.
In ruling upon a motion for involuntary dismissal pursuant to TR 41(B), even where a motion for special findings of fact has been made, the trial court must view the evidence in a light most favorable to the plaintiff or party with the burden of proof. In the case at bar a TR 52(A) motion for special findings of fact was made *198 and granted prior to the introduction of any evidence, and a TR 41(B) motion for involuntary dismissal was made at the close of the Board's evidence. It was necessary for the trial court to make its special findings of fact under the standard set forth in TR 41(B), that is, in a light most favorable to the Board. It could not weigh the evidence, nor judge the credibility of witnesses.
Since all of the evidence and inferences are to be considered in favor of the Board in the case at bar, in order to obtain reversal the Board only needs to show prima facie evidence of its right and power to condemn property, of a correct description of the property sought to be condemned, of the names of all landowners and lien holders, of the intended use of the property (including whether such intended use is public or private), that the Board has made a good faith attempt to purchase Schafer's property and the parties have been unable to agree upon a purchase price, and that the Board has an immediate need or a fair and reasonable future need for Schafer's land.[2]
The trial court concluded that the Board proved that the description of the land sought to be condemned was correct, that Schafer was the owner in fee of that land, and that, if its members had been properly appointed, the Board of Aviation Commissioners of Clark County would have had the right and the power to condemn property under its eminent domain power. As to the other elements enumerated above, we must examine the evidence to determine whether the trial court applied the proper evidentiary standard in granting Schafer's motion for involuntary dismissal under TR 41(B).
The trial court found that the Board members were not properly appointed because the certificates of appointment and certified oaths thereon, which were filed by the respective Board members with the county clerk, did not contain the county auditor's signature of certification, nor the seal of the Board of County Commissioners, as required by IC 1971, 5-5-1-4 (Burns Code Ed.). The trial court held that the offices on the Board were vacant and that the Board did not contain sufficient members to constitute a quorum; therefore, it could not perform any official acts as a board, e.g., approving the bringing of this suit.
Even though the certificates of appointment of the respective Board members were not certified by the county auditor, the offices held by the Board members did not become vacant, because IC 1971, 19-6-1-4 (Burns Code Ed.) provides in part that "commissioners so appointed shall hold office for a term of four [4] years, and until their successors shall be appointed and qualified ... ." Therefore, even though their respective four year terms of office had expired, the Board members were empowered by IC 19-6-1-4, supra, and by Ind.Const., art. 15, § 3 to hold over until they or their successors were duly appointed and qualified.[3] As aviation commissioners empowered by the state constitution and by statute to hold over, they were de jure officers, entitled to exercise all the power which had been statutorily granted to the Board, and continued to be de jure officers after the expiration of their first term in office.
Assuming, arguendo, that the Board members were not de jure officers, they were, nonetheless, de facto officers. A de facto officer is described in McGuirk v. State ex rel. Gottschalk (1930), 201 Ind. 650, 658, 169 N.E. 521, 523 as follows:
"All that is required, when there is an office to make an officer de facto, is, that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary that his election or appointment should be valid, for that would make him an officer de jure. Felker v. Caldwell (1919), 188 Ind. 364, 123 N.E. 794. `A person whose election to an office is irregular and void, because at the time it was made he was a *199 public defaulter, and hence ineligible under a statute providing that the election of a defaulter to any office of trust or profit shall be void, is nevertheless an officer de facto, if he discharges the duties of the office under color of such election.' Constantineau, De Facto Doctrine § 158. In Leach v. Cassidy (1864), 23 Ind. 449, where there was a controversy as to the office of school trustee in a town, the following was stated: `All the allegations of Leach himself show that Cassidy was trustee de facto. He was consequently entitled to perform all the duties and exercise all the powers of the office, until ousted by some one having a better right to it.'" (Original emphasis)
In the case at bar the evidence presented by the Board clearly shows that the Board members were in possession of an appointive office, performing their respective duties of their office, and claiming to be members of the Board under color of an appointment by the Board of County Commissioners. At the very least the Board members were de facto officers, and, as such, were empowered to act in their respective official capacities, as members of the Board.
As de jure officers (or at least de facto officers) the members of the Board were empowered to act as a board, and their official acts, including the bringing of this suit, were valid.
There is some evidence which would tend to support the trial court's finding that the Board did not make a good faith attempt to purchase Schafer's land, did not have an immediate or reasonable future need for Schafer's land, and did not intend to condemn Schafer's land for a public use. However, in ruling upon a motion for involuntary dismissal under TR 41(B), the trial court was not at liberty to weigh the evidence.
The evidence most favorable to the Board reveals that the Board made several attempts over a long period of time to purchase Schafer's land by offering an amount which was equal to the fair market value of the land. The Board submitted evidence which showed that detailed drawings had been made of the proposed airport construction, including drawings of intended future expansion. There was evidence which indicated that all of Schafer's land was needed for the proposed airport. Although there is some evidence which showed that part of Schafer's land would be leased to a private enterprise for the development of an industrial complex, there is also testimony wherein the engineer for the proposed construction denied that the Board intended to build an industrial complex on any part of the land to be acquired from Schafer.
In summary the evidence most favorable to the Board shows that: (1) the Board has the power of eminent domain, (2) the Board members are de jure (or at least de facto) and, as such, have the power to collectively perform official acts within the scope of their power, (3) the Board intends to construct and maintain an airport for public use in Clark County, (4) Schafer is the owner in fee of the land sought to be condemned, (5) the Board has an immediate and reasonable future need for Schafer's land, (6) the Board has made a good faith effort to purchase Schafer's land for an amount equal to the fair market value of the land, and (7) the parties have been unable to agree upon a purchase price. We, therefore, hold that the trial court erred in granting Schafer's motion for involuntary dismissal under TR 41(B), because the evidence most favorable to the Board shows that the Board had a prima facie right to obtain Schafer's land under its power of eminent domain.

Issue Two
The Board contends that the trial court erred in awarding appraisal and attorney's fees to Schafer, as reimbursement for litigation expenses. In light of our holding in Issue One of this opinion we hold that the court erred in granting appraisal and attorney's fees to Schafer.
Attorney's fees or litigation expenses are not embraced within the just compensation to be paid for lands taken by *200 eminent domain;[4] attorney's fees can be awarded by the trial court only where there is a statutory grant of power to do so.
IC 1971, 8-13-18.5-13 (Burns Code Ed.) provides in part:
"(a) The court having jurisdiction of a proceeding instituted by an agency to acquire real property by eminent domain shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if 
(1) the final judgment is that the agency cannot acquire the real property by eminent domain; or
(2) the proceeding is abandoned by the agency.
(b) Any award made pursuant to subsection (a) of this section shall be paid by the agency for whose benefit the eminent domain proceedings was instituted."
In light of our holding in Issue One of this opinion, it is clear that Schafer has not brought herself within the provisions of IC 8-13-18.5-13, supra. The trial court is ordered to rescind Schafer's award of attorney's fees and litigation expenses pending the final outcome of the new trial.
Judgment reversed and cause remanded for new trial and for further proceedings not inconsistent with this opinion.
ROBERTSON, C.J., and HOFFMAN, J., participating by designation, concur.
NOTES
[1] See IC 1971, XX-X-X-XX (Burns Code Ed.).
[2] See IC 1971, XX-XX-X-X (Burns Code Ed.) and IC 1971, XX-XX-X-X (Burns Code Ed.).
[3] See Swank v. Tyndall (1948), 226 Ind. 204, 78 N.E.2d 535.
[4] See State v. Holder (1973) 260 Ind. 336, 295 N.E.2d 799 and State v. Palmwic Indiana Realty, Inc. (1973), 156 Ind. App. 488, 297 N.E.2d 479.