In re WARDSHIP OF Ryan Christopher TURRIN.

No. 4-981A111.

Court of Appeals of Indiana, Fourth District.

June 8, 1982.

Philip H. Larmore, Adair, Perry, Beers, Mallers & Larmore, Fort Wayne, for appellant.

John E. Williams, Jr., Fort Wayne, for appellee.

MILLER, Presiding Judge.

Appellant Department of Public Welfare of Allen County Indiana (Welfare) is appealing an adverse judgment which in part awarded attorney fees in the amount of $780 to the appellees—foster parents of Ryan Christopher Turrin. The sole issue for our review is whether the trial court had the authority to order Welfare to pay for the foster parents' attorney fees in this matter. We find no statute or agreement

which would authorize an attorney fee award given the facts in this case. Further, the record does not reveal Welfare's conduct to be vexatious or oppressive in the extreme so as to justify punitive legal fees; but, in any event, governmental entities, according to the latest expression of our Supreme Court on the subject, are not liable for damages punitive in nature. Consequently, we have no choice but to reverse the attorney fee award.

## FACTS

On February 20, 1981, in the Allen Superior Court, Randall and Rhonda Englehart, as foster parents of a child afflicted with cystic fibrosis, filed their petition for 1) reimbursement for past expenses of approximately $6,400; 2) an increase of $19 a day over the normal maximum per diem for foster care; and 3) a prospective order for reimbursement of future treatment expenses. The Engleharts sought reimbursement for a variety of past expenditures *e.g.*, travel expenses for taking the child to university hospitals, applesauce and powdered milk, toilet paper and the purchase and maintenance costs associated with "special equipment" such as humidifiers and a "Devilbiss—Nebuliser." The petition also sought reimbursement for future expenses for, among other things, dental care, an "Oster vibrator," cystic fibrosis counseling and parochial school tuition (at the hearing the Engleharts withdrew their request for this tuition.) The petition also sought "legal fees."

The case was tried before a referee in the Allen County Superior Court Family Relations Division who found all matters in the petition had been "agreed upon with exception of the powdered milk, the special care and attorney fees." The referee concluded 1) the Engleharts should be reimbursed for the powdered milk; 2) relief for special care items should be denied as it "constitutes part of the foster care responsibility" and; 3) Welfare should be responsible for the Engleharts' attorney fees in the amount of $780. The trial judge adopted the referee's findings as the findings and order of the court.

## DISCUSSION AND DECISION

### A. *Statutory Basis for Attorney Fees*

At the outset we note neither the parties nor the record have disclosed the statutory basis for the Engleharts' petition, although it appears to have been brought under the dependent children provisions of the Welfare Act and their corresponding administrative regulations, Ind.Code 12–1–7–1 to 28.2 and 470 IAC 2–4–1 to 11, which provide in part for "assistance" and "medical expenses" for an eligible dependent child residing in "a foster family home." Our review of the dependent children statute and regulations discloses no provision which provides for foster parents' attorney fees in a proceeding such as the one in the case at bar.

Welfare contends the trial court exceeded its authority by ordering attorney fees against Welfare because there was no statute or agreement so providing, and in the absence of such a basis the general rule provides each party must pay his or her own counsel fees. In support of its argument Welfare correctly states the general rule citing *Trotcky v. Van Sickle*, (1949) 227 Ind. 441, 85 N.E.2d 638. In response the Engleharts argue the attorney fee award was proper in view of Ind.Code 31–6–4–18(a), and alternatively under the "obdurate behavior" exception to the general rule on attorney fees as expressed in *Cox v. Ubik*, (1981) Ind.App., 424 N.E.2d 127. We agree with Welfare.

IC 31–6–4–18(a) provides: "[t]he cost of any services ordered by the juvenile court for any child or his parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 [IC 31–6–10–1 to 4] shall be paid by the county, and the county council shall provide sufficient funds to meet the court's requirements." We are not persuaded this statute is applicable given the facts in the present case because the statutory language speaks of "[t]he cost of any *services ordered* by the juvenile court." (Emphasis added.) The statute does not

refer to *costs* ordered by the court but only to services. The record in the present case is devoid of any entry by either the referee or the trial judge which ordered the appointment of counsel for the Engleharts or for the foster child. We conclude, therefore, IC 31–6–4–18(a) provides no basis for the attorney fee award in the case at bar. We find support for our conclusion from the fact that, unlike the provisions of IC 31–6–4–18(a), other provisions of the Juvenile Code specifically provide for the appointment and payment of counsel. Ind.Code 31–6–7–2(b) and (c) provide in part: "[t]he [juvenile] court may appoint counsel to represent any parent in any ... proceeding" and "[p]ayment for counsel shall be made under IC 31–6–4–18." Thus, IC 31–6–4–18 relied upon by the Engleharts, merely provides the mechanism to pay for the services of counsel *after* appointment by the court. In construing a statute it is just as important to recognize what the statute does not say as it is to recognize what it does say. *Van Orman v. State*, (1981) Ind.App., 416 N.E.2d 1301. When certain items are specified or enumerated in a statute, then, by implication other items not so specified are excluded. *E.g., Maroon v. State Dep't of Mental Health*, (1980) Ind.App., 411 N.E.2d 404. Therefore, since the Legislature has authorized the juvenile court to appoint counsel for parents[1] and has provided a means to pay for such an appointment then, by negative implication, in the absence of such an appointment we conclude the Legislature intended each party to pay for his or her own counsel fees. We also note Ind. Code 31–6–1–2(3) defines a "parent" to mean "a biological or adoptive parent" but does not mention foster parents. "[W]here a statute is clear and unambiguous, we have no choice but to hold it to its plain meaning." *Seymour Nat'l Bank v. State*, (1981) Ind., 422 N.E.2d 1223, 1226. In sum we find no statutory authority for the award of attorney fees in the present case, nor does the record reveal an agreement by the parties concerning attorney fees.

## B. *"Punitive" Attorney Fees*

In *Cox v. Ubik, supra*, this Court recently stated "a trial court may use its inherent equitable powers to allow [attorney] fees [in the absence of a statute or agreement] where a party has acted in bad faith (the 'obdurate behaviour' exception)." *Id.* 424 N.E.2d at 129. In explaining this exception the *Cox* court declared:

> "to constitute bad faith or obdurate behaviour for the purpose of awarding attorney fees, conduct must be 'vexatious and oppressive in the extreme' [*St. Joseph's College v. Morrison, Inc.*, (1973) ] 158 Ind. App. [272,] 280, 302 N.E.2d [865,] 871. The reasons for such a strict standard are twofold. First, allowance of attorney fees, absent statute or agreement, is an exception to a longstanding rule in Indiana that litigants must pay their own counsel fees. *See, Trotcky v. Van Sickle, supra.* Second, the nature of *an attorney fee award under the bad faith exception is punitive*, designed to reimburse a prevailing party who has been dragged into baseless litigation and thereby subjected to great expense. *See, Hall v. Cole*, (1973) 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702." (Emphasis added.)

*Id.* On the other hand the mere refusal to pay a disputed claim is not considered bad faith, nor is the fact that a judgment is ultimately entered against a party necessarily evidence of bad faith. *St. Joseph College, Inc. v. Morrison*, (1977) 158 Ind.App. 272, 302 N.E.2d 865. Here the record does not disclose the Engleharts to have been "dragged into baseless litigation." *Cox v. Ubik, supra.* At the hearing the Engleharts withdrew their demand for parochial school tuition, the payment of which would have been substantial. In addition the judgment of the court denied their request for expenses of special care, a determination not challenged on appeal. Given this record we must conclude Welfare's initial denial of the Engleharts' claims had some merit and consequently was not baseless.

---

1. Ind.Code 31 6 7 2(a) provides for the appointment of counsel for a child alleged to be a delinquent who does not have an attorney, and

Ind.Code 31–6–3–4 authorizes the juvenile court to appoint an attorney as a *guardian ad litem.* Neither situation is applicable here.

Finally, it is readily apparent the obdurate behavior exception to the general rule on attorney fees espoused in *Cox v. Ubik, supra,* is punitive in nature. Therefore, because Welfare is a governmental entity punitive damages cannot be assessed against it under the reasoning of the recent decision in *State v. Denny,* (1980) Ind., 406 N.E.2d 240.

In *State v. Denny, supra,* our Supreme Court reviewed an opinion of the Court of Appeals, *State v. Denny,* (1978) Ind.App., 377 N.E.2d 893, which awarded 10% damages against the State under the authority of Ind.Rules of Procedure, Appellate Rule 15 because the State had "demonstrated bad faith sufficient to justify assessing damages" in that, on appeal, the sole issue raised by the State had previously been decided adversely to it in two cases in which it had been a party. *Id.* 377 N.E.2d at 895. The Court of Appeals' opinion also reprimanded the State for presenting an appellate brief devoid of cogent argument or citation to authority. On transfer, after reference to the Indiana Tort Claims Act which states in part "[a] governmental entity is not liable for punitive damages," Ind. Code 34–4–16.5–4, our Supreme Court reversed on this issue. As explained by the Supreme Court,

> "[i]t may be contended that this provision is not applicable to this case in that it is a part of the Indiana Tort Claims Act. Nonetheless, the concept of the State not having a state of mind or not being deterred by punitive damages should be the basis for the prohibition of such punitive

damages in all cases applicable to the State. Such Act should be considered as a statement of public policy by the legislature that the State is not to be considered as being liable for punitive damages in cases such as this.

> "Such interpretation of the non-application of AP 15(G) shall control all such cases in which the ten per cent (10%) damages would be payable from State funds but is not to be a prohibition against such damages in any case in which such would be justified where imposed against individuals acting in their individual capacity only."

*Id.* 406 N.E.2d at 241.

We conclude there was no basis for an award of attorney fees in the present case. There was no statutory basis authorizing such payment, Welfare's actions were not vexatious and oppressive in the extreme and, finally, as a governmental entity, Welfare was not subject to damages punitive in nature.

Reversed and remanded with instructions to strike the attorney fee award and enter judgment accordingly.

CONOVER and YOUNG, JJ., concur.