**STATE of Indiana, Appellant
(Plaintiff Below),**

**v.**

**Carl D. HICKS and Delores Hicks,
Husband and Wife; Larry E. Hicks,
Appellees (Defendants Below),**

**Auditor of Vermillion County and
Treasurer of Vermillion County,
(Defendants Below).**

**No. 2–1082A337.**

Court of Appeals of Indiana,
Second District.

July 12, 1984.

Linley E. Pearson, Atty. Gen., Kenneth M. Wahnsiedler, Deputy Atty. Gen., Indianapolis, for appellant.

Bommershine & Goss, Monticello, Malcolm H. Aukerman, Newport, for appellees.

SHIELDS, Judge.

The condemnor-appellant, the State of Indiana (State) appeals three separate orders of the White Circuit Court awarding to the condemnees-appellees, Carl D. Hicks, Delores Hicks and Larry Hicks (referred to jointly as "Hicks") their attorneys' fees and extraordinary litigation expenses (which includes incidental expenses such as lodging, mileage, change of venue fees and witness fees, hereinafter referred to as "expenses") incurred by the Hicks by reason of the obdurate behavior of the State's employees.

The following facts are relevant to the issue presented in this consolidated appeal. This litigation originates out of three separate condemnation proceedings instituted by the State in 1975 and 1976 for three separate parcels of property located in Vermillion County, Indiana, and owned by the Hicks. The State filed timely exceptions to all three court appraisals, and the Hicks filed a timely exception to one appraisal.

While these proceedings were pending in Vermillion County, unfavorable publicity concerning the Hicks and particular gravesites located on one of the parcels appeared in the local press and on area television broadcasts. The Hicks contend State employees released knowingly false information to the press intending to tarnish the Hicks' reputation in the community where a jury of their peers would soon be determining damages for the taking of their property. These releases are the bases of the Hicks' allegation of bad faith on the part of the State.

Asserting they could not receive fair trials in Vermillion County, the Hicks filed verified motions for change of venue in all three proceedings. The condemnation actions were venued to White Circuit Court, at which time the Hicks filed a counterclaim against the State for defamation. The actions were tried to juries in White Circuit Court in March 1978, December 1978, and July 1981. The juries returned verdicts in each of the condemnation actions and a verdict of one thousand dollars ($1,000) in the defamation counterclaim. Neither the State nor the Hicks appealed the judgments entered upon the juries' verdicts.

Thereafter, the White Circuit Court conducted a hearing to determine if the Hicks' attorneys' fees and expenses should be assessed against the State because of its conduct during litigation. The White Circuit Court issued orders awarding the Hicks their attorneys' fees and expenses incurred over and above those expenses which would have otherwise been incurred had the three condemnation cases been tried in Vermillion County.

The following language appeared in each of the trial court's orders:

"the Court being cognizant of the fact that the jury did in C–154–77 return a verdict against the State of Indiana for their obdurate misbehavior, to-wit: Defamation of the character of the defendants herein, in an attempt to undermine the defendant's right to have a fair trial in this cause, and the time for appealing said jury verdict has expired, and the Court being cognizant that the State of Indiana offered no evidence of value on expense in rebuttal thereof, and therefore, the Court now being duly advised in the premises now finds that the allegations contained in said request are true; that the defendants are entitled to be reimbursed for all expenses incurred by them in perfecting a change of venue from Vermillion County, Indiana, and such expenses as were incurred by them

**1148**

in the trial of these causes over and above the Court costs, witness fees and attorney fees as would have been otherwise incurred by the defendants, had this cause been tried in Vermillion County, Indiana...."

Record at 370, 750–751, 1804.

The total extraordinary litigation expenses for each of the three condemnation proceedings were $2,438.91, $5,091.90, $4,597.25 respectively.

The Hicks advance two theories to justify their award of attorneys' fees and expenses by the trial court: (1) the obdurate behavior, or bad faith exception to the general rule of nonrecovery of attorney fees; and (2) the constitutional mandate entitling condemnees to just compensation for property taken for public use. IND. CONST. art. I, § 21.[1]

### I. Bad Faith Exception

The Hicks argue the trial court correctly awarded the attorneys' fees and expenses under the bad faith exception to the general rule which requires each party to the litigation to pay his own counsel fees. The Hicks contend the State was guilty of vexatious and oppressive conduct, pointing to the State employees' releases of "false" information to the local press, which the Hicks allege was an attempt by the State to tarnish the reputation of the Hicks in the community in which their condemnation cases were to be tried. This "obdurate behavior" necessitated a change of venue to White County which brought about extraordinary attorneys' fees and incidental expenses over and above the expenses which would have been incurred had the cases been tried in Vermillion County where the Hicks reside.

The Hicks' argument requires us to determine if the bad faith exception for attorney fees [2] may be applied against the State; and if so, if evidence sufficient to demonstrate the State engaged in bad faith conduct during the course of the condemnation litigation existed to justify the court's award under the exception. Concluding the bad faith exception is not applicable to the State, we do not address the sufficiency argument.

In Indiana, absent specific authority or contractual agreement, each party to litigation pays his counsel fees. *Trotcky v. Van Sickle,* (1949) 227 Ind. 441, 85 N.E.2d 638; *Briggs v. Clinton County Bank & Trust Co.,* (1983) Ind.App., 452 N.E.2d 989, 1014. This rule has been abrogated in recent years by the trial court's use of its inherent equitable powers to award attorney fees when a party has acted in bad faith. *Briggs; In re Wardship of Turrin,* (1982) Ind.App., 436 N.E.2d 130, 132; *Ubik.* The *Ubik* court explained this exception by stating:

> "[T]o constitute bad faith or obdurate behavior for the purpose of awarding attorney fees, conduct must be 'vexatious and oppressive in the extreme' [*St. Joseph's College v. Morrison, Inc.,* (1973)] 158 Ind.App. [272,] 280, 302

---

1. A third theory, based on the allowance for "costs" in the Eminent Domain Statute, I.C. 32–11–1–10 (Burns Code Ed., Repl.1980) is addressed by the State, but is not maintained by the Hicks as a feasible basis for the expenses and attorney fees.

   I.C. 32–11–1–10 provides, "The costs of the proceedings [condemnation] shall be paid by the plaintiff, except that in case of trial the additional costs thereby caused shall be paid as the court shall adjudge." Our courts have determined this provision may be applied to tax the "costs" of a condemnation proceeding against the State as a condemnor. *Flesch v. State,* (1968) Ind., 242 N.E.2d 511. However, courts have construed the term "costs" in this provision to include only those "usual and ordinary expenses of a trial which are prescribed by

statute to be paid to the court." *State v. Holder,* (1973) 260 Ind. 336, 339, 295 N.E.2d 799, 801. *See e.g., Holder; State v. Palmwic Indiana Realty, Inc.,* (1973) 156 Ind.App. 488, 297 N.E.2d 479 ("costs" provision does not include attorney fees, professional witness fees, trial preparation expenses, *e.g.,* mail, travel, telephone and photograph fees); *Cox v. Ubik,* (1981) Ind.App., 424 N.E.2d 127 ("costs" provision does not include deposition expenses).

2. The bad faith exception to the general rule allows for only an award of *attorney fees* and does not encompass "litigation expenses", including lodging, mileage, change of venue fees and expert witness fees. *Cox v. Ubik,* (1981) Ind.App., 424 N.E.2d 127, 131.

N.E.2d [865,] 871. The reasons for such a strict standard are twofold. First, allowance of attorney fees, absent statute or agreement, is an exception to a longstanding rule in Indiana that litigants must pay their own counsel fees. *See, Trotcky v. Van Sickle, supra.* Second, *the nature of an attorney fee award under the bad faith exception is punitive,* designed to reimburse a prevailing party who has been dragged into baseless litigation and thereby subjected to great expense. *See, Hall v. Cole,* (1973) 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702." (emphasis added.)

424 N.E.2d at 129.

█ The State argues because the bad faith exception is punitive in nature, the trial court's judgments are erroneous in that punitive damages cannot be assessed against the State, citing *State v. Denny,* (1980) 273 Ind. 556, 406 N.E.2d 240. In *Denny,* the supreme court held as a matter of public policy, the State is not liable for punitive damages because the State does not have a "mind" that can be deterred by an award of punitive damages.[3] We recognize, as does the State, *Denny* did not involve an award of attorney fees under the bad faith exception. The issue was the applicability of Ind.Rules of Procedure, Appellate Rule 15(G) to the State and the trial court's award of ten percent (10%) damages against the State pursuant to Rule 15(G).[4] However, the *Denny* court's reasoning and its declaration of public policy denying "punitive" damages against the State were employed by the court in *In re Wardship of Turrin,* (1982) Ind.App., 436 N.E.2d 130, to prohibit an award of attorney fees under the bad faith exception against a governmental entity, the Department of Public Welfare of Allen County, Indiana. The court in *Turrin* noted:

"[I]t is readily apparent the obdurate behavior exception to the general rule on attorney fees espoused in *Cox v. Ubik, supra,* is punitive in nature. Therefore because Welfare [Department of Welfare] is a governmental entity punitive damages cannot be assessed against it under the reasoning of the recent decision in *State v. Denny,* (1980) Ind., 406 N.E.2d 240."

436 N.E.2d at 133.

We follow the reasoning of both *Turrin* and *Denny* and apply it to the instant case in ruling the bad faith exception to the general rule of nonrecovery of counsel fees, being "punitive in nature," is inapplicable when the exception is sought to be applied against the State.

█ Nonetheless, we recognize one aspect of the bad faith exception, one which the Hicks emphasize is significant here, is that an award under such exception is "also designed to reimburse a prevailing party who has been unduly subjected to great expense." *Briggs,* 452 N.E.2d at 1014. As such, the Hicks argue, their award is unlike an award for purely punitive damages which is designed solely as punishment for oppressive wrongdoing and for its deterrent effect and which is *not* based upon a theory of compensation to the injured party. Consequently, because the trial court's award of extraordinary litigation expenses, based on the State's bad faith misconduct, was designed to compensate the Hicks for an injury inflicted upon them by the State, the State is not immune from such an award.

Even though the award in the instant case may have had an incidental compensatory effect, it is the existence of *bad faith* on the part of the State which is the essential element in triggering the award of attorney fees. *See Hall v. Cole,* (1973) 412

---

3. For example, I.C. 34–4–16.5–4 (Burns Code Ed., Supp.1983) of the Indiana Tort Claims Act, which provides in part "[a] governmental entity is not liable for punitive damages," is a statement of this public policy by our legislature. *See Denny,* 406 N.E.2d at 241.

4. Ind.Rules of Procedure, Appellate Rule 15(G) provides: "If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten percent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702. The award was intended as a punishment for the State's alleged oppressive misconduct and to prevent further misconduct. Because the award is premised upon a theory of punishment, the State may not be held liable for two policy reasons. First, as was noted in *Denny*, the State does not have a "mind" that can be deterred by an award of punitive damages. Secondly, it is the citizen taxpayers who would bear the burden of this award, the same group for whose protection an award like this would be made. *See City of Gary v. Falcone*, (1976) 169 Ind.App. 295, 348 N.E.2d 41, 42.

## II. *Just Compensation*

█ Alternatively, the Hicks argue the trial court properly awarded attorneys' fees and expenses as part of the "just compensation" for their property contemplated under our constitution.[5] The Hicks contend absent a change of venue to White County the injury to their reputation caused by the State's conduct would have resulted in a Vermillion County jury awarding them less than just compensation for their property. Thus, the additional expenditure of attorneys' fees and expenses involved in trying the cases in White County was necessary to ensure the Hicks obtained just compensation.

The Hicks acknowledge courts in Indiana have refused to permit the recovery of attorneys' fees and/or other expenses incurred in a condemnation proceeding to ensure condemnees obtain just compensation. *Board of Aviation Commissioners of Clark County v. Schafer*, (1977) 174 Ind.App. 59, 366 N.E.2d 195; *Harding v. State ex rel. Dept. of Natural Resources*, (1975) 166 Ind.App. 515, 337 N.E.2d 149. Nonetheless, the Hicks contend these cases are inapposite inasmuch as the condemnees in those cases did not allege bad faith on the part of the condemnor. Rather, the Hicks cite *United States v. Lee*, (5th Cir. 1966) 360 F.2d 449, to support their award in the instant case.

In *Lee*, the Government alleged condemnees' property amounted to 1100 acres. The condemnees disputed the accuracy of this amount by presenting past tax receipts and deeds for the tract in issue. The Government refused to agree to any other amount of acreage and told condemnees they (condemnees) had to furnish a survey. Based on this survey, the Government stipulated prior to trial the acreage actually being taken amounted to 1182.06 acres, resulting in $6,800.00 of additional compensation for the increased acreage. The court granted the costs of the survey to the condemnees based on its analysis of both the just compensation and due process clauses. The court noted, "There is no question that if the survey had not been made, the Government would not have stipulated that the amount of acres actually being condemned was 1181.06, and part of the property of the landowners would have been taken without just compensation or due process of law." *Id.* at 452.

In the instant case, the alleged misrepresentations concerned matters collateral to those that would bear directly upon the property being acquired. In any event, the Hicks' argument that without the change of venue their property would have been taken without just compensation is unsubstantiated and too tenuous to justify the award in the instant case. The record is devoid of proof a trial in Vermillion County would have disadvantaged the Hicks to the extent they would not have received just compensation for their property. Absent a showing of such evidence, we could not say the Hicks would not have received their constitutional right to just compensation had the jury trials occurred in Vermillion County.

Just compensation "is for the property, and not to the owner." *United States v. Bodcaw*, (1979) 440 U.S. 202, 203, 99 S.Ct. 1066, 59 L.Ed.2d 257. Therefore, any incidental award to the owner resulting from the taking of his land is not a part of the constitutional entitlement to just com-

---

5. IND. CONST. art. I § 21 provides "[n]o man's property shall be taken by law, without just compensation...." *See also* U.S. CONST. amend. V.

pensation, but rather a matter of legislative grace. *See e.g.*, I.C. 32–11–1–10 (Burns Code Ed., Repl.1980).[6] Unlike the court in *Lee*, we fail to find a reason justifying the trial court's award of attorneys' fees and expenses pursuant to the Hicks' right to just compensation.

Judgments ordering the State to pay attorneys' fees and expenses to the Hicks reversed.

MILLER, J., sitting by designation, concurs.

SULLIVAN, J., dissents, with opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent from Part I of the majority opinion.

Representatives of the Indiana Department of Highways manifestly demonstrated obdurate conduct in dealing with the Hicks in the course of litigation against them. I do not believe the doctrine of governmental immunity precludes use of the power vested in the court to award the attorneys' fees and extraordinary litigation expenses occasioned by the bad faith conduct.

Initially, I take issue with the majority's repeated characterization of the State's obdurate conduct as "alleged." Such characterization is inaccurate inasmuch as there has been a determination that the State was liable for the defamation. The State did not appeal from the jury's determination that it was liable for the defamation which necessitated the change of venue. The State is therefore bound, as are we, to accept as fact that it was guilty of obdurate conduct.

Concepts of equity and fairness must be read into I.C. 32–11–1–10 which provides that in case of a contested eminent domain action costs occasioned by the contest shall be paid "as the court shall adjudge." This language gives the court discretion. That discretion should not be restricted by arcane views as to what may and what may not constitute "costs"—particularly if that restriction prevents the court from according fair treatment to the unwilling litigant who was forced into an expensive and unwarranted procedural situation by the obdurate conduct of State officials in the course of the eminent domain proceedings.

This very statutory provision, I.C. 32–11–1–10, pursuant to a 1977 amendment, contemplates a measure of recompense for "litigation expenses" (as that term may differ from "additional costs") if the State, whether innocently or with overreaching and oppressive intent, has unnecessarily forced the landowner to litigate the value of the property taken.

I have little doubt that the 1977 amendment was a response to *State v. Holder* (1973) 260 Ind. 336, 295 N.E.2d 799 in which the court by 3–2 vote disallowed necessary litigation expenses as "additional costs". *See also State v. Palmwic Indiana Realty, Inc.* (2nd Dist.1973) 156 Ind. App. 488, 297 N.E.2d 479. The legislation appears to enact the philosophy of the dissenters in *Holder*. *See State v. Holder*, *supra*, Arterburn dissenting, 295 N.E.2d at 802 *et seq.*

I do not believe the compensatory award of expenses occasioned by the change of venue is made necessary by the constitutional requirement that a party not be deprived of his property without just compensation. The compensation is not for the real estate condemned. The conceptual underpinnings are similar, however, in terms of fairness and justice.

---

6. In 1977, our legislature amended I.C. 32–11–1–10, which assesses costs in condemnation proceedings, by providing:

"However, if, in the case of trial, the amount of damages awarded to the defendant by judgment, exclusive of interest and costs, is greater than the amount specified in the last offer of settlement made by plaintiff under section 8.1 of the chapter, the court shall allow the defendant his litigation expenses in an amount not to exceed twenty-five hundred dollars ($2,500)."

However, this amendment is inapplicable to the present situation because these condemnation cases were filed prior to July 1, 1977, the effective date of the amending provision. *See State v. Bircher*, (1983) Ind.App., 446 N.E.2d 607.

As stated in the dissenting opinion in *Holder:*

"... the propriety of allowance [of litigation expenses and fees] should be based upon the facts and circumstances of each case as determined by the trial court in its exercise of sound discretion.

\* \* \* \* \* \*

... bad faith or oppressive conduct by either party such as that used by the state in this case, is most relevant in determining if the trial court should exercise its discretion." 295 N.E.2d at 804–805.

Requiring the State to reimburse Mr. Hicks for the reasonable and necessary expenses occasioned by the State's irresponsibility is not punitive to the State and therefore not precluded by I.C. 34–4–16.5–4. Such reimbursement is compensatory, although not as a part of the "just compensation" for the property appropriated. Rather, the compensation is the expenses of the change of venue necessitated by the obdurate conduct of the State. Had the State not defamed the condemnee, the additional or extraordinary litigation expenses would not have been incurred. To require the State to reimburse the Hicks for these expenses is only equitable and fair. It would in no way penalize the State because it would merely require reimbursement for the costs occasioned by the State's defamation of Mr. Hicks and no more. Therefore, I disagree with the dictum in *In re Wardship of Turrin* (4th Dist.1982) Ind.App., 436 N.E.2d 130, which implies otherwise. In addition, I would make no distinction between attorney's fees and other necessary litigation expenses attributable to the change of venue. *See Cox v. Ubik* (3d Dist.1981) Ind.App., 424 N.E.2d 127 at 131 (Garrard, J. concurring in part and dissenting in part).

The trial court properly assessed the compensatory costs of attorney fees and other litigation expenses occasioned by the change of venue.