**STATE of Indiana and Indiana State Highway Department, Appellants–Defendants,**

**v.**

**James R. EATON and Shirley Eaton, as Legal and Natural Guardians of Jeffrey J. Eaton, Appellees–Plaintiffs.**

No. 69A04–9011–CV–541.[1]

Court of Appeals of Indiana, First District.

Nov. 21, 1991.

Rehearing Denied Jan. 8, 1992.

---

1. This case was diverted to this office by order of the Chief Judge on September 26, 1991.

Linley E. Pearson, Atty. Gen., Arthur M. Small, Deputy Atty. Gen., Indianapolis, for appellants-defendants.

G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for appellees-plaintiffs.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The State of Indiana and Indiana State Highway Department ("State") appeal from a judgment for James R. Eaton and Shirley Eaton, as Legal and Natural Guardians of Jeffrey J. Eaton ("Eatons"), in an action for personal injury damages arising from an accident involving a motorcycle and a semi-tractor trailer. We reverse and remand.

## ISSUES [2]

We restate the issues on appeal as:

1. Did the trial court err in instructing the jury regarding a statute pertaining to stopping illegally on a highway?

2. Did the trial court err in amending and increasing a jury verdict for the Eatons in their capacity as Jeffrey Eaton's natural guardians?

3. Did the trial court err in granting costs to the Eatons?

## FACTS

On October 2, 1981, a state highway maintenance crew was continuing the work it began the day before, "clipping" the shoulder of U.S. Highway 421 ("Highway") for drainage. Record at 760. When clipping a highway's shoulder, a grader pulls up dirt, gravel, and other materials along the edge of the road onto the road. Dust is created when a highway is clipped. A loader loads the dirt onto a dump truck, which hauls the debris away. Normally, a sweeper makes several passes to clear away much of the dirt and gravel left on the roadway.

Warning signs were posted in the vicinity of the area in which the crew was clipping.

⊙⇒215

2. We do, however, address issues two and three since similar issues may arise on remand.

The crew was clipping the Highway from south to north, and much dust was generated by its activities. However, the evidence is conflicting on exactly the amount of dust present: some witnesses testified that the Highway was only slightly dusty, while others stated that the dust formed a sizeable cloud on the roadway.

At approximately 2:30 p.m. on October 2, 1981, Jeffrey Eaton ("Jeffrey"), then a high school senior, was driving his motorcycle home from school on the Highway, traveling in a northerly direction. Jeffrey noticed dirt and dust on the Highway. As he came up over a slight rise in the Highway, he slowed down from his speed of forty (40)—forty-five (45) miles per hour.

A semi-tractor trailer was traveling on the Highway in front of Jeffrey. The evidence is unclear regarding whether the trailer was slowing down, stopped, or beginning to move after stopping, but the driver stated that he was following a flagman's directions in the area of the Highway being clipped. The trailer's driver remembers hearing a bang and seeing something in the roadway in his rearview mirror. Upon exiting the trailer's cab, the driver discovered Jeffrey, who had apparently run into the rear of the trailer. Jeffrey, who suffered severe neurological injuries as a result of the accident, does not clearly remember the day's events, but it appears that Jeffrey's motorcycle collided with the rear end of the trailer.

Jeffrey and his parents brought suit against the State and the owner and operator of the trailer. At trial, they proceeded only against the State, since proceedings against the trailer's owner and operator had previously been dismissed.

The jury awarded the Eatons, as Jeffrey's legal guardians, $545,980.00, which the trial court reduced in accord with the Indiana Tort Claims Act[3] to $300,000.00. The Eatons were also awarded $101,670.00 in their capacity as Jeffrey's natural guardians. Additionally, the trial court awarded the Eatons costs as a result of this action in the sum of $2,454.20, even though the Eatons withdrew their motion for costs.

On August 23, 1990, the State filed a praecipe and a motion to correct error regarding the judgment entered against the Eatons in their capacity as Jeffrey's natural guardians, alleging that the award was excessive.

On December 21, 1990, a hearing was held on the State's motion to correct error. At this hearing the Eatons orally requested that the trial court increase the jury's award. The court increased the award from $101,670.00 to $300,000.00. The State filed a praecipe regarding the additur on January 3, 1991.[4]

Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

### Issue One

First, the State asserts that the trial court erred in instructing the jury regarding Jeffrey's various duties in operating his motorcycle, and in giving the Eatons' instruction regarding a statute prohibiting parking on a highway. Because we find the trial court's giving of the Eatons' tendered instruction regarding stopping on a roadway warrants reversal, we address only this instruction.

■■■ Initially, we note that the giving of jury instructions is a matter within the trial court's discretion, which this court reviews only for an abuse of discretion. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343. In our determination of whether an instruction is supported by the evidence, we consider only the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom; if any evidence supports the instruction, we will uphold the trial court's giving of the instruction. *Id.* All instructions given must be read together and con-

---

**3.** IND.CODE § 34–4–16.5–4, *et seq.*

**4.** We note that the State does not contest the award of $300,000.00 to the Eatons in their capacity as Jeffrey's legal guardians, and the praecipe encompassed only the court's additur to the award to the Eatons as Jeffrey's natural guardians. *See Issue Two.*

strued as a whole. *Palmer v. State* (1980), Ind.App., 411 N.E.2d 643, 647, *trans. denied, cert. denied,* 454 U.S. 842, 102 S.Ct. 154, 70 L.Ed.2d 126. Moreover, confusing or misleading jury instructions should not be given. *Hurt v. State,* (1990), Ind.App., 553 N.E.2d 1243, 1249.

The State alleges that the trial court erred in giving the Eatons' tendered instruction regarding stopping on a highway. We find that the giving of this instruction was error, this instruction was not harmless error, and reversal is warranted.

The disputed instruction reads:
"I instruct you that there was in full force and effect a statute of the State of Indiana which provided on the date of the collision sued upon as follows:

Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be available from a distance of two hundred feet (200') in each direction upon such highway."

Record at 189. The State's objection comprised several pages of the record, and does mention a lack of applicability to the case at bar, as well as the instruction's irrelevance to the accident at issue. Record at 862–868. We find that although the State's objection to the instruction was inartful, it was not deficient.

■■■ The instruction, taken from a portion of Indiana's Uniform Act Regulating Traffic on Highways, is inapplicable to a situation in which a driver is stopped at the direction of a flagman in a construction area. *See* IND.CODE § 9-4-1-1 *et seq.,* now IND.CODE § 9-21-1-1 *et seq; Lovely v. Keele* (1975), 166 Ind.App. 106, 113, 333 N.E.2d 866, 870 (there are instances where a driver must stop his vehicle *as a part of* his use of the highway for the purpose of travel (emphasis in original)). Thus, the instruction was improper because it may

have misled or confused the jury, and is not applicable to this case. *See Hurt,* 553 N.E.2d at 1249.

■■■ If the semi-tractor trailer owner and operator were still parties to this litigation, the instruction may have had relevance to this case in showing their negligence; however, since actions against the trailer's owner and operator were dismissed prior to the trial of this action, the instruction is not proper. While the evidence may support a finding that the State was negligent in causing Jeffrey's injuries, because we cannot say that this improper instruction did not influence the jury to find in favor of the Eatons, the error is not harmless. *See Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, 693 (an erroneous instruction is presumed to have influenced a trial's result unless it appears that the verdict could not have been different with proper instructions); *see also Kreigh v. Schick* (1991), Ind.App., 575 N.E.2d 1063. Therefore, reversal and a new trial are required.

*Issue Two*

The State also contends that the trial court erred in amending the jury verdict through additur after the State filed a motion to correct error seeking remittitur. We find that the trial court judge had no jurisdiction to enter any order at that time regarding the judgment, since by operation of law, his power to rule on the damage award was already extinguished.

Much of the procedural confusion regarding this ruling stems from the substantive change in Ind. Trial Rule 53.3, which occurred in 1989. The rule prior to February 16, 1989 provided in pertinent part:
"Rule 53.3 Motion to correct error; time limitation for ruling
(A) Time limitation for ruling on motion to correct error.
In the event a court fails for forty-five (45) days to set a motion to correct error for hearing, or fails to rule on a motion to correct error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, *upon application of any inter-*

*ested party,* the pending motion to correct may be deemed denied."

T.R. 53.3(A) (West 1988) (emphasis added). As amended, the provision now reads:

"Rule 53.3 Motion to Correct Error: Time Limitation for Ruling

(A) Time Limitation for Ruling on Motion to Correct Error.

In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the praecipe under Appellate Rule 2(A) within thirty (30) days after the Motion to Correct Error is deemed denied."

T.R. 53.3 (West 1991). The amendment omits that portion of T.R. 53.3 which provides that the parties must activate the operation of this "lazy judge" rule. Instead, this rule has become self-activating upon the passage of the requisite number of days.

█ In the case at bar, judgment was entered on July 27, 1990, and the State timely filed its motion to correct error on August 23, 1990. The trial court neither set the motion for hearing within forty-five (45) days nor ruled on it within that time period. Under T.R. 53.3, this motion was deemed denied by operation of law on October 7, 1990, forty-five (45) days after the motion was filed. To perfect an appeal from the automatic denial of this motion, the State would have had to have filed its praecipe regarding this ruling within thirty (30) days of October 7, 1990, or on November 5, 1990, which it failed to do.

█ Notwithstanding the motion's denial, the trial court granted the Eatons additur on December 21, 1990, one hundred and twenty (120) days after the motion was filed, and therefore, seventy-five (75) days after the motion was denied. This ruling clearly violated T.R. 53.3. Moreover, the

trial court lost jurisdiction over the case after ninety (90) days had elapsed from the date of judgment. *See* IND.CODE § 33–1–6–3 (courts retain jurisdiction over their judgments for ninety (90) days after judgment is rendered); *Arsenal Savings Association v. Westfield Lighting Co.* (1984), Ind.App., 471 N.E.2d 322, 325 ("clear beyond doubt" that trial court's jurisdiction over its judgments ends after ninety (90) days except under limited circumstances, namely in child custody and child support cases). The trial court thus had no jurisdiction to grant the Eatons additur.[5]

*Issue Three*

█ Finally, the State argues that the trial court erred in granting costs to the Eatons. We agree.

Ind.Trial Rule 54(D) allows litigants to receive costs from the State only where permitted by law. Since the Eatons brought this action pursuant to the Tort Claims Act,[6] they may not recover costs. *See State v. Wilbur* (1984), Ind.App., 471 N.E.2d 14, *trans. denied* (State is not liable for ordinary court costs absent specific statutory authority for their imposition). The Eatons argue that because they withdrew their request for costs, this issue is moot. However, the docket sheet indicates no entry showing that the Eatons' motion was withdrawn, and does not show that the judgment awarding costs was likewise withdrawn. The docket sheet must be amended to show that the Eatons' motion was withdrawn and costs were not awarded.

We reverse the jury's award for the Eatons and remand for a new trial in accordance with this opinion.

Reversed and remanded.

ROBERTSON and CONOVER, JJ., concur.

---

5. We note the appellees' brief cites portions of T.R. 53.3 that were repealed in 1989. Counsel would do well to adhere to Ind.Appellate Rule 8.3(A)(7), requiring citation to appropriate stat-

utes. This rule refers to statutes that are applicable to the case under review.

6. I.C. § 34–4–16.5 *et seq.*