STATE of Indiana, Appellant–Defendant,

v.

Debbie CARTER, Individually and Kayla Woods, by her next friend and natural mother, Debbie Carter, Appellees–Plaintiffs.

No. 49A05–9506–CV–207.

Court of Appeals of Indiana.

Dec. 7, 1995.

---

Pamela Carter, Attorney General, Geoffrey Slaughter, Amy Stewart Johnson, Deputy Attorneys General, Office of Attorney General, Indianapolis, for appellant.

Ralph J. Bratch, The Law Office of Stanley Kahn, Indianapolis, for appellees.

Richard C. Kraege, Patrick F. Mastrian III, Goodin & Kraege, Indianapolis, for amicus curiae: Indiana Defense Lawyers Assoc.

## OPINION

SHARPNACK, Chief Judge.

The State brings this case before us on interlocutory appeal, challenging the trial court's award of sanctions against it for failing to mediate in good faith as required by the Alternative Dispute Resolution Rules ("A.D.R. rules"). We consolidate and restate the issues raised as whether the trial court erred in sanctioning the State.[1] We reverse.

### FACTS

The facts relevant to the interlocutory appeal follow. Plaintiff, Debbie Carter, brought a negligence claim against the State on behalf of herself and her daughter after she slipped and fell while holding her daughter in a branch of the Bureau of Motor Vehicles. The State's answer denied the substance of Carter's allegations and asserted several affirmative defenses, including contributory negligence, lack of proximate cause of the injuries, and lack of notice of the allegedly dangerous condition.

Upon Carter's motion, the trial court ordered the cause to be submitted for mediation. Deputy Attorney General Amy Johnson, who represented the State, spoke with her supervisor prior to mediation and had authority to settle the case for a specified amount.

On January 30, 1995, the mediation conference was held at the office of Mediator Eugene Maley. During the course of the mediation, the parties remained approximately $20,000 apart in their offers to settle and failed to reach an agreement. Later that day, Johnson made a formal offer of judgment for $3000, the largest amount she had offered during mediation. Carter did not accept this offer.

On February 1, 1995, Carter moved for sanctions against the State on the grounds that the State had "failed to act in good faith in making a reasonable attempt to resolve this case." Record, p. 17. Without holding a hearing, the court granted the motion on February 3, 1995, stating:

"IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Plain-

---

1. The State raises the issue of whether it was entitled to a hearing on the motion for sanctions before the motion was granted. We do not need to address this issue directly since we reverse on other grounds.

tiffs' Motion for Costs and Sanctions is granted, and the defendant is hereby ordered to pay the costs of said mediation and sanctions are to be levied against the defendant for failure to act in good faith." Record, p. 18. A hearing was set for April 6, 1995.

On February 7, 1995, the State filed a motion to set aside the award. The court set a hearing for the State's motion on April 6, 1995, the same day as the previously scheduled hearing on the sanctions.

On April 6, 1995, the trial court heard oral arguments on the motion to set aside the sanctions.[2] The following day, the court denied the State's motion to set aside the earlier order and assessed the sanctions against the State in the amount of $500.00 for attorney's fees and $212.50 for mediation costs. The State brings this interlocutory appeal of the court's order imposing sanctions in the form of fees and costs pursuant to Ind. Appellate Rule 4(B)(1).

### DISCUSSION

 The issue before us is whether the trial court erred in sanctioning the State for failure to act in good faith. Generally when reviewing cases involving a sanction against one party made at the request of the opposing party, we apply an abuse of discretion standard. *See Nesses v. Specialty Connectors Co.* (1990), Ind.App., 564 N.E.2d 322, 327. The trial court commits an abuse of discretion only when it reaches an erroneous conclusion and judgment—that is to say, one which is clearly against the logic and effect of the facts or the reasonable, probable deductions which may be drawn from the facts. *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 290.

The State contends that a determination of bad faith should require a specific finding of misconduct. Specifically, the State argues that the record is devoid of any evidence of bad faith because the unwillingness to settle during mediation does not constitute evidence of bad faith. Also, the State maintains that it is immune from punitive sanctions

such as those the trial court imposed. However, Carter argues that the State did not mediate in good faith because a State's representative with the authority to settle was not present during mediation and because the State was not in a position to mediate. Moreover, Carter maintains that the State is not immune from sanctions in this case.

### I.

First, the State argues that the trial court erred in imposing sanctions because there was insufficient evidence from which it could conclude that the State acted in "bad faith." Although the trial court does not explicitly state the rule under which it imposed sanctions, we presume it acted pursuant to Ind. Alternative Dispute Resolution Rule 2.11. This rule states:

> "Upon petition by either party, the court may impose sanctions against any attorney, or party representative who fails to comply with these rules, limited to assessment of mediation costs and/or attorneys' fees relevant to the process."

A.D.R. 2.11.

This rule authorizes a trial court to impose sanctions against a party who fails to comply with the other mediation rules. One such rule is 2.1, which states, "[p]arties and their representatives are required to mediate in good faith." A.D.R. 2.1. While Indiana courts have not yet directly addressed the issue of bad faith and sanctions in mediation under the A.D.R. rules, the issue has been litigated in other contexts.

 Bad faith amounts to more than bad judgment or negligence; "[r]ather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity. . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." *Oxendine v. Public Service Co.* (1980), Ind. App., 423 N.E.2d 612, 620. Since a bad faith determination inherently includes an element of culpability, a finding of bad faith should require more than the unsubstantiated alle-

---

2. This hearing was neither transcribed nor otherwise recorded. As a result, the parties prepared a stipulated statement of proceedings pursuant to

Ind. Appellate Rule 7.2(A)(3)(c), which the court approved on June 8, 1995. This stipulation is part of the appellate record.

gations of an adverse party. *See Island Entertainment, Inc. v. Castaneda* (1994), Tex.Ct.App., 882 S.W.2d 2, 5, *reh'g denied, error denied* (holding that the trial court did not act within its power when it sanctioned appellants where there was no evidence that appellants mediated in bad faith).

Carter submitted no evidence of bad faith with the motion for sanctions.[3] Moreover, the parties stipulated that no evidence was "heard or taken" at the hearing after the sanctions had been imposed. Supp. Record, p. 10. Indeed, we find no evidence anywhere in the record itself to support the court's "bad faith" determination. Rather, the only evidence in the record of what transpired at the mediation conference is the report of the mediator submitted to the court on March 3, 1995. The report stated that "[t]he mediation conference was conducted in accordance with procedures provided in the A.D.R. Rules." Record, p. 20. Because the report states that the rules were complied with, it implies that the parties mediated in good faith pursuant to A.D.R. 2.1. However, there is no evidence that the court considered this report in rendering its decision after the hearing. In fact, the court wholly failed to mention the report or to set forth any legal or factual basis for its finding that the State mediated in bad faith.

■ Accordingly, there is no evidentiary basis to support the trial court's finding of "bad faith" against the State. Because Carter bore the burden of proof on these issues, the lack of evidence should have been fatal to her motion. *See Watson v. Thibodeau* (1990), Ind.App., 559 N.E.2d 1205, 1211.

■ Additionally, Carter argues that the A.D.R. rules require a person with settlement authority to be present during mediation. A.D.R. 2.7(B)(2). By statute, the governor is the sole authority to bind the State in a legal settlement. Ind.Code § 34-4-16.5-13. He is, therefore, the only State official

having any settlement authority. Both parties agree, however, that it would be impracticable to expect the governor to appear in person at all of the State's mediation sessions. As a result, a substitute representative for the State is acceptable during most sessions. Nevertheless, Carter maintains that attendance at the mediation by Deputy Attorney General Amy Johnson amounted to bad faith because her supervisor, David Hurley, was not also present. However, Carter offers no explanation of why the presence of Hurley rather than Johnson would have been acceptable since technically only the governor has settlement authority. Practically speaking, Johnson did have the ability to settle for a specified amount on behalf of the State after speaking with Hurley prior to mediation. The State submitted a Confidential Mediation Statement, participated in mediation, and raised its initial offer from $2000 to $3000. It is not for us to decide whether the State's assessment of the value of the case was reasonable, only that the State, via Johnson, was prepared to settle at some point. That it was not a point to the liking of Carter is of no consequence.

The Colorado Supreme Court addressed this issue in *Halaby, McCrea & Cross v. Hoffman* (1992), Colo., 831 P.2d 902. In *Halaby,* the Colorado Supreme Court held that the trial court abused its discretion by sanctioning a law firm for not participating in a court-ordered settlement conference in good faith. In its settlement conference statement, the defendant advised the court that the "Plaintiffs' claims are frivolous and groundless ... Accordingly, Defendant is unprepared at the present time to make a settlement offer." *Id.* at 904. During the settlement conference, the plaintiffs offered to settle for a specified amount, but defense counsel responded he only had authority to settle the case for $300. Thereafter, the settlement conference ended.

---

3. Although styled a "verified" pleading, Carter's motion lacked any oath or affirmation by counsel that the statements contained therein were made "under the penalties for perjury" as required by Ind. Trial Rule 11(B). The absence of a verification should have prevented the contents of the pleading from constituting admissible evidence against the State. *See generally Hoskins v. Sharp*

(1994), Ind.App., 629 N.E.2d 1271, 1277, *reh'g denied.* Furthermore, the effectively unverified motion consisted of conclusory statements and alleged only that the State "failed to act in good faith in making a reasonable attempt to resolve this case." Record, p. 17. No specific factual allegations were presented to support the motion.

Two days later, the settlement judge issued an order that the law firm had acted in bad faith by violating the court's order for a settlement conference and the order that the parties attend the settlement conference with full settlement authority.

On appeal, the Colorado Supreme Court rejected the trial court's finding that the law firm lacked settlement authority, stating:

"The petitioner did not lack settlement authority, it was just not adequate according to the respondent [settlement conference judge]. As the respondent himself stated, parties are not obligated to settle. An "adequate" amount of settlement authority will vary based on the circumstances of each case, and a settlement conference judge should not impose sanctions because, in his opinion, the amount is insufficient."

*Id.* at 908. Furthermore, the court concluded that the defendant's law firm demonstrated good faith because it complied with all orders of the court:

"[P]etitioner complied with the orders to participate in the settlement conference and to submit a confidential settlement statement outlining the full extent of its current settlement position. That statement clearly set out the position of the petitioner's client—that the plaintiffs' claims were without merit and that he was unprepared to make a settlement offer.

\* \* \* \* \* \*

Having complied with the orders of both the trial judge and the settlement conference judge, and having informed the respondent of its client's position regarding settlement prior to conference, we find that the petitioner acted in good faith."

*Id.*

■ Similarly, the Indiana A.D.R. rules explicitly state that the "[p]arties and their representatives are required to mediate in good faith, but are not compelled to reach an agreement." A.D.R. 2.1. Consequently, a reasonable disagreement over the merits of a case should not prompt an award of sanctions against either party.

■ Moreover, an agreement must be based upon the autonomous decision of each party. A.D.R. Rule 2.1. Although mediation may not reduce a settlement, it may, at least, "reduce points of contentions". *Id.* Settlement of the whole case is not the only goal of mediation; "agreement" is another goal, whether it be a factual stipulation, an agreement to forego jury trial in favor of binding arbitration, an identification of issues, a reduction of misunderstandings, a clarification of priorities, or a location of points of agreement. Thus, even where the odds of resolution are slim, mediation can be beneficial because other goals might be achieved. If sanctions are imposed in situations where no settlement is agreed upon, parties may refuse to participate in mediation.

■ Carter argues that the State showed bad faith by "participat[ing] in the mediation knowing it had a limited willingness to mutually resolve the dispute...." Appellee's brief, p. 7. On the contrary, the State offered to resolve the dispute for a specified sum, even if the terms were not agreeable to Carter. The State's assessment that Carter's case did not merit a larger settlement offer does not constitute bad faith, and Carter offers no authority for the argument that taking a firm stance during mediation justifies sanctions. Furthermore, Carter offers no explanation as to why her refusal to settle on the State's terms is less culpable than the State's refusal to settle on her terms. Accordingly, the trial court's order imposing sanctions was an abuse of discretion.

## II.

■ The State's second argument is that the sanctions are improper because the State is immune from paying costs and fees. Neither party cites, nor did our independent research reveal, any case which addresses this specific issue in the context of the A.D.R. rules. However, based upon other relevant considerations and the public policy issues involved, we conclude that the trial court should not have sanctioned the State because it is immune from punitive awards.

■ In Indiana, absent specific authority or contractual agreement, each party to the litigation pays its own counsel fees. This rule has been abrogated in recent years by the trial court's use of its inherent equitable powers to award attorney's fees when a party

has acted in bad faith. *State v. Hicks* (1984), Ind.App., 465 N.E.2d 1146, 1148. In *Hicks,* an award under the bad faith exception was deemed punitive even though there was a compensatory component to the award designed to reimburse a prevailing party. *Id.* at 1149. Even though the award may have had an incidental compensatory effect, it was the existence of bad faith on the part of the State which was the essential element in triggering the award of attorney fees. *Id.* The award was intended to punish the State for its alleged oppressive misconduct and to prevent further misconduct. *Id.* Because the bad faith exception was punitive in nature, the exception does not apply against the State. *Id.* at 1149. As a matter of public policy, the State is not liable for punitive damages for two reasons. First, the State does not have a mind that can be deterred by an award of punitive damages. *State v. Denny* (1980), 273 Ind. 556, 406 N.E.2d 240. Secondly, it is the citizen taxpayers who would bear the burden of this punitive award if assessed against the State. *Hicks,* 465 N.E.2d at 1149. We recognize that the case before us does not involve an award of attorney fees under the bad faith exception, but the reasoning and public policy precluding punitive damages are relevant to our analysis.

This policy prohibiting punitive damage awards against the State is established in other areas as well. For example, the Indiana Tort Claims Act, which is the basis for the underlying tort claim in our case, specifically prohibits punitive damage awards against the State. I.C. § 34–4–16.5–4; *see Department of Natural Resources v. Taylor* (1981), Ind.App., 419 N.E.2d 819, 822; *Gibson v. Gary Housing Authority* (7th Cir. 1985), 754 F.2d 205. Furthermore, our case law clearly mandates that the State is not liable for costs to a prevailing plaintiff pursuant to T.R. 54(D) [4] unless specific statutory authority provides otherwise. *See Highway Department v. Snyder* (1992), Ind., 594 N.E.2d 783, 788; *State v. Eaton* (1991), Ind. App., 581 N.E.2d 956, 960; *City of Ham-*

*mond v. Conley* (1986), Ind.App., 498 N.E.2d 48, 53; *State v. Wilbur* (1984), Ind.App., 471 N.E.2d 14, 15, *reh'g denied, trans. denied.* Furthermore, even the A.D.R. rules do not explicitly include the State in the scope of the sanctions. The general sanction provision does not warrant the trumping of the State's long established immunity from sanctions. *See generally Atascadero State Hosp. v. Scanlon* (1985), 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (stating "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."). Therefore, in this case where we have no specific statutory law permitting the award against the State under the A.D.R. rules, there is no authority for assessing these costs and fees against the State.

Consequently, even if there had been sufficient evidence to conclude that the State mediated in bad faith, the award against the State was improper and should be reversed. REVERSED.

RUCKER and HOFFMAN, JJ. concur.

---

4. T.R. 54(D) states in part:
 "Costs. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise di-

rects in accordance with any provision of law; but costs against any governmental organization, its officers, and agencies shall be imposed only to the extent permitted by law."