Richard A. JOHNSTON and Camela J. Johnston, Appellants–Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee–Defendant.

No. 54A01–9601–CV–5.

Court of Appeals of Indiana.

July 11, 1996.

Robert A. Hutchens, Danville, for Appellants.

Kenneth M. Wahnsiedler, John A. Young & Associates, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Judge.

Richard A. and Camela J. Johnston [Johnston] appeal the partial summary judgment entered in favor of the State Farm Mutual Automobile Insurance Company on the counts of Johnston's amended complaint claiming that State Farm had tortiously breached its duty to exercise good faith and that they were entitled to punitive damages. Johnston raises two issues, one representing each of the two counts of his complaint upon which summary judgment has been entered. We restate and consolidate them into one analysis and affirm.

### FACTS

The facts in the light most favorable to the nonmovant Johnston reveal that on February 11, 1992, Richard Johnston cut his finger while at work. Mary Schroyer, the plant nurse, began to drive Johnston in her mini-van to see a doctor. While stopped at an intersection, the mini-van was rear-ended by a pick-up truck owned and operated by Larry E. Kunkel. Richard Johnston suffered serious personal injuries as the result of the accident. Camela Johnston suffered the corresponding loss of Richard's love, affection, and care.

Both Kunkel and Schroyer were insured by the Illinois Farmers Mutual Insurance Company. Both of these policies had limits of $50,000.00 per person, $100,000.00 per occurrence and $5,000.00 of medical payments coverage (MPC). The Johnstons were insured by two State Farm policies with underinsured motorist coverage (UIM) with limits of $250,000.00 per person and $500,000.00 per occurrence. The Johnstons also had MPC with limits of $1,000.00 under each State Farm policy.

Johnston made a claim against Kunkel's policy. Johnston filed a lawsuit against Kunkel on July 20, 1992. Johnston's attorney advised Johnston's State Farm Agent that Johnson may be filing a claim under his State Farm UIM and MPC coverage. Johnston's attorney stayed in contact with State Farm keeping State Farm apprised of the progress of the proceedings with Farmers, the primary insurer. Johnston's attorney also informed State Farm that Johnston's medical bills had been paid by his employer under Worker's Compensation and by his employer's group health insurance carrier.

Negotiations with Farmers were protracted. Finally, on May 20, 1993, Johnston's attorney informed State Farm that Farmers had conveyed a settlement offer of $35,000.00 to settle the Johnston's claim against Kunkel and that the case had been ordered to mediation. After mediation failed, Johnston's attorney advised State Farm that Johnston was demanding Farmer's policy limits of $50,000.00. Johnston's attorney advised State Farm that Farmers had not yet paid any compensation or MPC benefits to the Johnstons.

On June 2, 1993, Farmers tendered its policy limits to settle the claim against Kunkel. Johnston's attorney requested State Farm's authorization of the settlement and advised State Farm that, under Ind.Code 27–7–5–6(b), Johnston would accept the offer unless State Farm advanced the sum of $50,000.00 within thirty days in order to preserve its subrogation rights against Kunkel. On June 14, 1993, before the thirty days had elapsed, Johnston amended his complaint adding State Farm as a defendant to recover under Johnston's UIM coverage. On July 9, 1993, Johnston accepted the $50,000.00 from Farmers and Kunkel was dismissed from the lawsuit.

On August 20, 1993, Johnston's attorney forwarded a settlement demand to State Farm in the amount of $200,000.00 representing the $250,000.00 UIM policy limit less the $50,000.00 paid by Farmers. On October 27, 1993, our supreme court handed down *Erie Insurance Company v. Hickman by Smith,* 622 N.E.2d 515 (Ind.1993), recognizing a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Id.* at 515. On January 4,

1994, the parties engaged in mediation, but mediation failed. On January 8, 1994, Johnston was permitted to amend his complaint adding the instant claims of bad faith and punitive damages against State Farm alleging that State Farm had employed abusive and harassing tactics in denying and refusing to pay the Johnston's UIM claim.

On March 18, 1994, State Farm filed the instant motion for summary judgment with respect to the new counts of bad faith and punitive damages. Johnston obtained several extensions of time in which to respond. On August 3, 1995, Johnston filed his response and brief in opposition to the motion along with his designation of materials.

As of August 3, 1995, Johnston had claimed medical expenses and lost wages in the amount of approximately $27,000.00 of which Worker's Compensation had paid approximately $16,000.00. Nevertheless, Johnston claims damages well in excess of $1,000,000.00 due to lost future wages and chronic pain. State Farm has disputed Johnston's entitlement to the policy limits and has offered only $25,000.00 to settle the dispute.

On September 18, 1995, a hearing was held on State Farm's summary judgment motion. On October 11, 1995, the trial court entered summary judgment against Johnston on his claims of bad faith and punitive damages along with the entry of extensive findings and analysis.[1] This appeal ensued. Additional facts are supplied as necessary.

## DECISION

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Great Lakes Chemical Corp. v. International Surplus Lines Insurance Co.*, 638 N.E.2d 847, 849 (Ind.Ct.App.1994). In reviewing a motion for summary judgment, this court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton*, 641 N.E.2d 665, 667 (Ind.Ct.App.1994). A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Seufert v. RWB Medical Income Properties I Limited Partnership*, 649 N.E.2d 1070, 1072 (Ind.Ct.App.1995). Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings, but must set forth specific facts, using supporting materials contemplated the rule, showing there is a genuine issue for trial. *Liberty Mutual Insurance Company v. Metzler*, 586 N.E.2d 897, 900 (Ind.Ct.App.1992), *trans. denied.* If the opposing party fails to meet this burden, summary judgment may be granted. *Id.*

In *Nelson v. Jimison*, 634 N.E.2d 509 (Ind.Ct.App.1994), we held:

The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from making an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving the insured, or exercising any unfair advantage to pressure the insured into settlement of his claim. The insurer does not necessarily breach its duty of good faith every time it erroneously denies an insurance claim; a good faith dispute about the amount of a claim will not supply the basis for recovery under the theory that the insurer tortiously breached its duty to exercise good faith with respect to its insured.

---

1. Specific findings and conclusions entered by the trial court when ruling on motions for summary judgment afford the appellant an opportunity to address the merits of the trial court's rationale. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.* The specific findings and conclusions

aid our review by providing us with a statement of reasons for the trial court's decision. *Id.* However, the findings and conclusions have no other purpose and we must base our decision upon the Ind.Trial Rule 56(C) materials properly designated to the trial court. *Id.*

Moreover, even if the jury determines that the insurer committed a tortious breach of its duty to exercise good faith, the right of the insured to punitive damages is not automatic. Punitive damages may be awarded only if there is clear and convincing evidence that the insurer acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake or other human failing.

*Id.* at 512 (Citations to *Erie*, 622 N.E.2d at 518–20 omitted). In *Nelson*, we reversed summary judgment in favor of the insurer noting that the insured had designated an *affidavit* of an expert in the area of insurance claims evaluation who opined that the insurance company had denied the insured's claim when it knew or should have known that it had no legitimate basis for the denial. 634 N.E.2d at 512–13. We also noted that the insured had established that the insurer had lost important documents from its files. *Id.* at 513.

■■■ The concept of bad faith in negotiations was elucidated in *State v. Carter*, 658 N.E.2d 618 (Ind.Ct.App.1995). Bad faith amounts to more than bad judgment or negligence. *Id.* at 621. Bad faith involves the conscious doing of wrong because of dishonest purpose or moral obliquity. *Id.* It contemplates a state of mind operating with furtive design or ill will. *Id.* Since a bad faith determination inherently includes an element of culpability, a finding of bad faith requires more than the unsubstantiated allegations of an adverse party. *Id.* at 621, 622. The *Carter* court held:

> The State's assessment that Carter's case did not merit a larger settlement offer does not constitute bad faith, and Carter offers no authority for the argument that taking a firm stance during mediation justifies sanction. Furthermore, Carter offers no explanation as to why her refusal to settle on the State's terms is less culpable than the State's refusal to settle on her terms. Accordingly, the trial court's order imposing sanctions was an abuse of discretion.

658 N.E.2d at 623.

■■■ In opposition to summary judgment, Johnston designated his own answers to interrogatories (answered under oath), in which he asserted that he had obtained the expert opinion of an attorney who was expected to testify that State Farm had breached its duty to deal in good faith, that the claim was worth in excess of policy limits, and that Johnston should be awarded punitive damages. In this interrogatory answer, Johnston asserts:

> The substance of the facts, grounds and opinions of which [the attorney] is expected to testify includes the following.
>
> > [the alleged opinion of the attorney complete with legal analysis]
>
> The above and foregoing is the response of the Plaintiffs, Richard A. Johnston and Camela J. Johnston; however, this response was not personally prepared by the Johnstons and they do not necessarily have personal knowledge of all the matters set forth herein, as such was prepared through information provided by counsel and by [the attorney retained as an expert witness].

Johnson did not obtain or designate any affidavit or other sworn statement of this expert witness.

Johnson also designated a letter addressed to his attorney from another attorney expert who billed himself as the "Consultant to the Insurance Industry." This letter, which detailed the expert's review of State Farm's handling of Johnston's claim was not sworn. No verified statement was obtained from this expert in resistance to summary judgment.

Affidavits which support and oppose motions for summary judgment must be made on personal knowledge, must affirmatively show that affiant is competent to testify as to matters covered, and must set forth facts as would be admissible in evidence at trial. Ind.Trial Rule 56(E); *Comfax Corporation v. North American Van Lines*, 638 N.E.2d 476, 481 (Ind.Ct.App.1994). Where affidavits do not comply with T.R. 56(E), they may not be considered in the determination of whether summary judgment was appropriate. *Id.* In determining whether a genuine issue of material fact exists for purposes of deciding a summary judgment motion, a court may not rely on supporting materials other than those

in the form intended by T.R. 56. *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 568 n. 3 (Ind.Ct.App.1986), *trans. denied.* For example, the unsworn letter from an expert may not be considered. *Id.*

In the present case, Johnson's answers to interrogatories, while sworn, expressly state that the expert's opinion set out within was not a matter of Johnston's personal knowledge. It is axiomatic that Johnston's hearsay testimony regarding an expert witness' opinion would not be admissible at trial. Similarly, the unsworn letter report of the other expert would obviously be inadmissible hearsay and cannot be considered in these summary judgment proceedings.[2]

 Although technically a claim for breach of an insurance contract, Johnston's claim against State Farm is, in essence, a claim for personal injuries including pain and suffering. In personal injury actions, the trier of fact is not required to award substantial damages for lost income, permanent impairment, or pain and suffering. *Dee v. Becker,* 636 N.E.2d 176, 178 (Ind.Ct.App. 1994). Such an award depends upon the evidence. *Id.* Damages for pain and suffering are of necessity a jury question which may not be reduced to fixed rules and mathematical precision. *Id.* Although the actual medical bills incurred may constitute evidence of the reasonable value of the services provided, such bills are not dispositive of the determination of the reasonable medical expenses to be awarded to an injured plaintiff. *Id.*

The properly designated evidence reveals nothing more than a good faith dispute regarding the value of Johnston's UIM claim. The properly designated evidence regarding the value of Johnston's personal injuries is not of such a quality that it clearly demonstrates that Johnston's damages exceed the UIM policy limit of $250,000.00. Therefore, the trial court properly determined that Johnston's claim for the tortious breach of

State Farm's duty to exercise good faith could not survive summary judgment. And, as the viability of Johnston's claim for punitive damages rests upon the viability of his tort claim, the trial court correctly entered summary judgment on this count as well. *See Erie,* 622 N.E.2d at 520. Johnston has failed to meet his burden of demonstrating that the trial court erred in entering summary judgment against him. Therefore, we find no error.

Judgment affirmed.

BAKER and GARRARD, JJ., concur.

---

2. Johnston argues that his designated materials are in the same form as the materials submitted in *Nelson,* 634 N.E.2d 509, in which we held that plaintiff had survived summary judgment. However, whether the designated materials satisfied the requirements of T.R. 56(E) was not an issue addressed in *Nelson.* Accordingly, *Nelson* can-

not operate as authority that the material submitted in the present case satisfied T.R. 56. *See, Brehm v. Hennings,* 70 Ind.App. 625, 123 N.E. 821, 823 (1919) (An appellate opinion cannot be held to constitute authority on a question which it does not decide).