FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellant–Respondent,

v.

Timothy CALVERT, Appellee–Petitioner.

No. 09A04–9602–CV–50.

Court of Appeals of Indiana.

Nov. 20, 1996.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellant–Respondent.

R. Tod Groff, Miller, Tolbert, Muehlhausen, Muehlhausen & Groff, P.C. Logansport, for Appellee–Petitioner.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Respondent, Indiana Department of Family and Social Services ("FSSA"), appeals from two orders: one granting the petition, filed by Appellee–Petitioner, Timothy Calvert ("Calvert") for judicial review of an agency action and reversing the decision of the administrative law judge, and the other denying FSSA's motion for relief from the trial court's order that FSSA pay for Calvert's care. We affirm, and instruct that Chase Center Nursing Home ("Chase") be granted the statutorily appropriate interest on the judgment.

### Issues

The parties present various issues which we restate as:

I. Whether the court had personal jurisdiction over FSSA in the proceeding requiring FSSA to pay for Calvert's care;

II. Whether that same court had statutory authority to order FSSA to pay for the services that the Indiana Adult Protective Services ("APS") required be provided to Calvert;

III. Whether the administrative law judge's decision was supported by the record, in accordance with the law, or otherwise proper;

IV. Whether the Attorney General's office engaged in a conflict of interest; and,

V. Whether Chase should recover its attorney fees incurred in the judicial review and appeal process, as well as statutory interest on the unpaid Medicaid obligation.

### Facts and Procedural History

Calvert was admitted to Chase on December 1, 1993 to convalesce after being hospitalized for increased seizure activities. On December 28, 1993, APS Investigator Jerry Stoner and Cass County Prosecutor Richard Maughmer filed in the Cass Circuit Court a petition for an involuntary protective order for Calvert. The following day, the court conducted a hearing and found that Calvert was an endangered adult, and that he should continue to be placed in protective care at Chase.

On February 11, 1994, FSSA reviewed Calvert's assessment and determined that he did not have medical need for continued residence in a nursing facility. On February 15 of that year, Calvert's placement at Chase was approved for thirty days only, from December 1, 1993 through December 31, 1993.[1] Calvert appealed the decision to deny him placement at Chase to the FSSA hearing and appeals division.

On June 23, 1994, an administrative law judge conducted an evidentiary hearing. Approximately two months later, that administrative judge issued an opinion affirming the decision of FSSA that Calvert's continued placement in a nursing facility was unwarranted. Ironically, on the same day the administrative judge issued his opinion, the Cass Circuit Court ordered that the State pay for Calvert's nursing home care from the date of placement until FSSA found Calvert a suitable alternative placement. The very next day, Calvert appealed the administra-

---

1. Usually, approval is sought and granted prior to a patient's admission to a nursing facility. However, Calvert was admitted without prior approval pursuant to an exception to the standard rule.

tive judge's decision to the Secretary of FSSA.

On January 5, 1995, the Secretary affirmed the decision of the administrative judge. Later that month, Calvert filed a verified petition for judicial review of the Secretary's action. FSSA filed an answer to Calvert's petition. On July 20, 1995, the trial judge ordered the parties to submit briefs regarding the petition, and they complied.

On September 25, 1995, FSSA filed a motion for relief from the order that they pay for Calvert's nursing home care from the date of placement until FSSA found Calvert a suitable alternative placement. In response, Calvert filed a motion to dismiss, to which FSSA then filed a response.

On October 25, 1995, the trial judge granted Calvert's petition for judicial review of an agency action, made extensive findings, and reversed the administrative judge's decision. Moreover, on October 30, 1995, the judge who received FSSA's September 25 motion denied it with a detailed order. FSSA filed a timely praecipe to appeal both the October 25 order and the October 30 order.[2]

### Discussion and Decision

#### I. Personal Jurisdiction

FSSA contends that since it did not commence the protective order action, did not join in the action, was not served with a summons, and did not enter an appearance, the Cass Circuit Court never acquired jurisdiction over it. FSSA argues that the failure to serve the Attorney General is another reason why jurisdiction over FSSA was not acquired. We are unconvinced that the Cass Circuit Court did not have jurisdiction over FSSA.

██ As all parties agree, FSSA is an umbrella agency with three divisions, one of which is the Division of Disability, Aging and Rehabilitative Services ("DDARS"). In turn, DDARS is authorized to create an Adult Protective Services Unit. Ind.Code § 12–10–3–1; Ind.Code § 12–9–5–3. DDARS must contract for the adult protective services required in each county with the prosecuting attorney, with a governmental entity qualified to provide the services required, or with a combination of the two. Ind.Code § 12–10–3–7.

In view of the uncontested facts that (1) the original petition for protective services for Calvert was filed by an APS representative and the Cass County Prosecutor, and that (2) APS is a responsibility of FSSA, we conclude that the Cass Circuit Court did have jurisdiction over FSSA. Moreover, since the prosecutor is specifically authorized to initiate the protective action on behalf of the State, we see no reason for the Attorney General to have been served. The prosecutor represents the State at the local level in adult protective matters just as he or she represents the State in criminal matters. The party which commenced an action need not be served when it inherently should have notice of that very action.

#### II. Statutory Authority

██ FSSA also contends that the trial court had no statutory authority to order FSSA to pay for Calvert's continuing nursing home care. Thus, FSSA claims the court lacked subject matter jurisdiction over the payment of Calvert's care. In order to address this issue, we look to the relevant provisions of the Indiana Code, keeping in mind that where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and the rules of statutory construction. *In re E.I.*, 653 N.E.2d 503, 507 (Ind.Ct.App. 1995). The court is required to determine and effect the legislative intent underlying

---

**2.** In preparing their briefs, practitioners are to follow the rules set out in the current Uniform System of Citation (Bluebook). Ind.Appellate Rule. 8.2(B). Practitioner's Note 2 of the Bluebook provides: "Citations in court documents and legal memoranda may be made in either of two ways: in citation sentences or in citation clauses...." Note 2 also states that these citations to authority are to "immediately follow the proposition they support (or contradict)." The example within Practitioner's Note 2 is illustrative. Citations should continue to appear in the text or body of appellate briefs—including reply briefs. The only exception arises when supplemental information appears in a footnote. Then, a citation to authority for that supplemental information is appropriately included in that same footnote.

the statute, and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* When determining whether the court's order complied with the statutory mandates, we construe the meaning of the statute by interpreting the statute as a whole and giving words their common and ordinary meaning. *Id.* at 511.

■ According to Ind.Code § 12–10–3–19, the "circuit and superior courts with jurisdiction in the county in which the alleged endangered adult resides have original and concurrent jurisdiction over a matter filed under this chapter trial court." Indiana Code Section 12–10–3–24 states:

If, after a hearing, the court determines that an endangered adult should be required to receive protective services, the court shall issue a protective services order. The order must stipulate the following:

(1) The objectives of the protective services order.

(2) The least restrictive protective services necessary to attain the objectives of the protective services order that the endangered adult must receive.

(3) The duration during which the endangered adult must receive the protective services.

(4) That the adult protective services unit or other person designated by the court shall do the following:

(A) Provide or arrange for the provision of the protective services ordered by the court.

(B) Petition the court to modify or terminate the protective services order....

"Protective services" is defined as available medical, psychiatric, residential, and social services that are necessary to protect the health or safety of an endangered adult. Ind.Code § 12–10–3–5. That same chapter also provides:

The court may issue an order to:

(1) enjoin a person from interference with the delivery of a protective service ordered under section 24 of this chapter; or

(2) direct a person to take actions to implement the delivery of the protective services ordered under section 24 of this chapter.

Ind.Code § 12–10–3–27.

Because Calvert resided in Cass County, the Cass Circuit Court properly had jurisdiction to hear the petition for protective services filed by APS. The administrative judge's order denying Medicaid benefits to Calvert in spite of FSSA's failure to find more appropriate placement for Calvert was apparently viewed by the trial court as an interference with the court order requiring that Calvert be provided with care. As such, the trial judge's order requiring FSSA to pay Chase for Calvert's care until they placed him at a suitable alternative location was the judge's way of directing FSSA to "take actions to implement the delivery of the protective services [previously] ordered". See Ind. Code § 12–10–3–27(2). The trial judge had the statutory authority to make his order and the responsibility to see that Calvert received the needed services. The protections envisioned by the statute are illusory unless the services ordered by the court are actually provided. The provision of services includes payment by the State in appropriate situations. To provide services only to those persons who can pay for them is token compliance with the statute.

*III. Administrative Law Judge's Decision*

■ FSSA also argues that under the applicable standard of review, the trial court should not have reversed the administrative judge's decision. "When reviewing the decision of an administrative agency, this court stands in the same position as the trial court." *SSU Fed'n of Teachers v. Board of Directors,* 656 N.E.2d 832, 835 (Ind.Ct.App. 1995). We may not retry the facts or substitute our judgment on factual matters for that of the agency. However, we are not bound by the agency's conclusions of law, as law is the province of the judiciary. *Id.*

Indiana Code Section 4–21.5–5–14(d) provides that a court shall grant relief only if it determines that a person seeking relief has been prejudiced by an agency action that is (1) arbitrary, capricious, an abuse of discre-

tion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. The party asserting invalidity of an agency action shoulders the burden of demonstrating that invalidity. Ind.Code § 4–21.5–5–14(a).

■ The trial judge noted that the practical result of the administrative judge's decision that Calvert's medical needs did not take precedence over his developmental disability needs or his mental illness needs was to deny Medicaid coverage to Calvert for his nursing home care at Chase. (R. 322). This denial of Medicaid coverage caused Chase to incur over $18,000.00 in damages resulting from lost payment for their nursing home services provided to Calvert. *Id.* The trial judge also found that:

> the decision by the Administrative Law Judge is arbitrary, not supported by substantial evidence, an abuse of discretion, and not in accordance with law, primarily for the reason that the Indiana Family and Social Services Administration (FSSA) did not provide services in accordance with its obligation under the law, and in accordance with the Order of the Cass Circuit Court. The FSSA failed in its obligation to deliver services to Mr. Calvert and to the health care providers providing services to Mr. Calvert. The record is lacking in evidence concerning the delivery of alternative health care services for Mr. Calvert, . . . . In this case, as correctly determined by the Administrative Law Judge, Mr. Calvert should have been receiving developmental disability health care services or mental illness health care services rather than medical health care services which are delivered by a nursing home. The health care delivery system administered by the State of Indiana through the FSSA failed to provide to Mr. Calvert the appropriate alternatives for his health care based upon his objective medical criteria. So now, the FSSA believes that the nursing home services provided were not what Mr. Calvert should have been receiving, so

they don't want to pay for it. Apparently, they would have paid for health care services addressing his developmental disabilities or mental illness needs, if anyone knew where to find those more appropriate health care services. . . . According to Court order, Mr. Calvert was required to be in Chase Center until such time as a more appropriate alternative could be provided by the FSSA. It is fundamentally unfair for FSSA to fail in its obligation to provide appropriate services to Mr. Calvert on the one hand, and on the other hand, to deny Medicaid coverage and payment for medical services provided by Chase Center pursuant to Court Order.

(R. 323–25).

Medicaid is a joint federal-state program aimed at providing health care to certain low income individuals who would not otherwise be able to afford medical treatment. 42 U.S.C. § 1396. The program operates through a combined scheme of federal and state statutory and regulatory authority. *See* 42 U.S.C. § 1396a; Ind.Code § 12–15–1–1. State and federal governments share the expense of providing Medicaid-covered services. *See* 42 U.S.C. § 1396b. The pertinent federal regulation, which deals with residents who do not require nursing facility services but do require specialized services for mental illness or mental retardation, states:

> Short term residents. Except as otherwise may be provided in an alternative disposition plan adopted under section 1919(e)(7)(E) of the Act, for any resident who requires only specialized services, as defined in § 483.120, and who has not continuously resided in a NF [nursing facility] for at least 30 months before the date of the determination, the State *must*, in consultation with the resident's family or legal representative and caregivers—
>
> (I) Arrange for the safe and orderly discharge of the resident from the facility in accordance with § 483.12(a);
>
> (ii) Prepare and orient the resident for discharge; and
>
> (iii) Provide for, or arrange for the provision of, specialized services for the mental illness or mental retardation.

42 C.F.R. § 483.118(c)(2)(1996)(emphasis added).

Like the trial court, we conclude that FSSA did not meet its legal obligation in this case to provide or arrange for specialized services for Calvert. Thus, while we agree with the facts as found by the administrative judge—including the fact that Calvert's medical needs took precedence over his developmental disabilities[3], we cannot affirm his conclusions because they are not in accordance with law. Instead, we affirm the trial court's conclusions regarding this issue.

### IV. Conflict of Interest

 Chase points out that on February 13, 1995, the Attorney General's office appeared for FSSA in court, yet the very next day appeared for Calvert in the same proceeding. This, Chase contends, is a serious conflict of interest. Chase then asserts, without citation to authority, that the pleadings and appeals filed by the Attorney General's office on behalf of FSSA should be considered nullities. Moreover, Chase boldly asserts that the dismissal of this appeal would be an appropriate sanction for the alleged conflict.

In response, the Attorney General's office admits (1) that Deputy Attorney General Frances Barrow entered her appearance for FSSA on February 13, and (2) that the next day, Deputy Attorney General Annette Biesecker ("Biesecker") also entered an appearance, in which she inadvertently stated that she represented Calvert. However, in a variety of motions which Biesecker filed thereafter, she stated explicitly that she appeared on behalf of FSSA. Chase then filed a motion requesting a hearing, asserting that Biesecker was taking the position that she represents FSSA, the Cass County Prosecutor's Office, and APS investigator Stoner. The order following the aforementioned hearing stated:

> . . . Also present is Deputy Attorney General, Annette Biesecker, Attorney for Respondent, Indiana Family and Social Services, Cass County Prosecutor's Office and

Jerry Stoner. And the Court, having heard the agreement of the parties, now orders as follows:

> 1. It is ordered that Cass County Prosecutor's Office and Jerry Stoner, Adult Protective Services Officer, are hereby dismissed as parties from this action without prejudice against refiling . . .

(R. 274).

Accordingly, we are unpersuaded that a true conflict of interest occurred. The initial mistake by the Deputy Attorney General was neither repeated nor compounded by further motions in which she claimed to represent Calvert. Thus, we do not reach Chase's arguments that the Attorney General's pleading should be deemed nullities or that a conflict should result in the dismissal of the appeal.

### V. Attorney Fees, Statutory Interest

Chase characterizes FSSA's actions—mandating that Chase provide care for Calvert in the APS action yet simultaneously refusing to award Medicaid benefits in the administrative proceedings—as unreasonable, groundless, and in bad faith. Therefore, Chase requests attorney fees pursuant to both Ind. Code § 34–1–32–1 and Ind.Appellate Rule 15(G). Chase contends it "may" also be entitled to claim its attorney fees against FSSA pursuant to 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1988. Finally, Chase requests that we hold FSSA responsible for interest at an annual rate of not less than six percent pursuant to Ind.Code § 34–4–16–6 for any unreimbursed Medicaid expenses determined to be due by the lower court's October 25, 1995 order.

Regarding attorney's fees, Ind.Code § 34–1–32–1(b) states:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:

---

**3.** We acknowledge that there was evidence in the record which could support the view that Calvert's medical needs did take precedence over his developmental disabilities. However, strong evidence supporting the administrative judge's contrary finding was also presented. In such a circumstance, our standard of review precludes us from reweighing the evidence on this issue.

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Similarly, an "award of damages under App.R. 15(G) is discretionary and may be ordered when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Tipton v. Roerig,* 581 N.E.2d 1279, 1285 (Ind. Ct.App.1991).

█ Without deciding whether FSSA's arguments were unreasonable, groundless, frivolous, or in bad faith, we hold that FSSA, as a State entity, is not responsible for Chase's attorney fees. In addressing this issue, we begin by acknowledging that in Indiana, absent specific authority or contractual agreement, each party to the litigation pays its own counsel fees. *State v. Carter,* 658 N.E.2d 618, 623 (Ind.Ct.App.1995). However, this general rule has been abrogated in recent years by trial courts' use of their powers to award attorney's fees when parties act in bad faith. *Id.* at 623–24. That is, trial courts use an award of attorney's fees as a way to punish litigants for certain actions. By their wording, Ind.Code § 34–1–32–1(b) and App.R. 15(G) are intended to punish parties for alleged oppressive misconduct and to prevent further misconduct. Yet, public policy dictates that the bad faith exception does not apply against a State entity. *Carter,* 658 N.E.2d at 624. This is because the State does not have a mind that can be deterred by an award of punitive damages. Moreover, it is the citizen taxpayers who would bear the burden of a punitive award if assessed against a State entity. *Id.* Accordingly, we will neither award appellate attorney's fees to Chase nor remand this case to the trial judge to make an award of trial attorney fees.[4] *See also In re Train Collision at Gary, Ind. on Jan. 18, 1993,* 654 N.E.2d 1137 (Ind.Ct.App.1995).

---

4. Moreover, because Chase did not originally bring either a § 1983 or a § 1988 claim, we are

█ FSSA has failed to respond to Chase's request for interest. According to Ind.Code § 34–4–16–6,

> Whenever, by final decree or judgment, a sum of money is adjudged to be due any person from the state, no execution shall issue but the judgment shall draw interest at an annual rate of six percent (6%) from the date of the adjournment of the next ensuing session of the general assembly until an appropriation is made by law for the payment and the judgment is paid.

We see no reason for Chase to be denied interest which it is due under Ind.Code § 34–4–16–6.

Affirmed with instruction to grant interest provided for by statute.

RILEY and DARDEN, JJ., concur.

unwilling to grant it attorney fees pursuant to those authorities.