CONSOLIDATED RAIL CORPORATION, Appellant–Defendant,

v.

ESTATE OF Michael K. MARTIN, by Kathryn Ann MARTIN, Administratrix, Appellee–Plaintiff.

No. 27A05–9812–CV–617.

Court of Appeals of Indiana.

Dec. 28, 1999.

Ronald J. Waicukauski, A. Kristine Lindley, White & Raub, LLP, Indianapolis, Indiana, Attorney for Appellant.

Patrick R. Ragains, Smith, Ragains & Cotton, Anderson, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

### Statement of the Case

Consolidated Rail Corporation ("Conrail") appeals the trial court's contempt order sanctioning Conrail for failing to send or have available at a settlement conference a representative with: 1) final settlement authority and 2) with authority to make an offer above that which was previously offered to the Estate of Michael K. Martin, by Kathryn Ann Martin ("Martin"), for the death of Michael K. Martin at a railroad grade crossing. We reverse.

### Issue

Conrail raises several issues for our review which we consolidate and restate as whether the trial court abused its discretion in sanctioning Conrail for failing to send or have available at a settlement conference a representative with: 1) final settlement authority and 2) with authority to make an offer above that which was previously offered.[1]

### Facts and Procedural History

At a mediation held on March 12, 1997, Conrail offered Martin a settlement in the amount of $250,000. Martin did not accept this offer.

On May 30, 1997, the trial court issued the following order:

This matter being set for hearing on various motions at 10:00 a.m. on June 10, 1997, for one hour, counsel and their clients, *with full settlement authority,* are ordered to further appear for a settlement conference immediately after the hearing on the motions, with said settlement conference to proceed continuously until this matter is settled. Because of the limited time available prior to trial for a settlement conference the court does not want to see any motions

to continue said settlement conference unless all parties agree.

R. 4 (emphasis added).

Conrail was represented by claim agent Robert McQuestion at the settlement conference.[2] In his affidavit, McQuestion acknowledged that he possessed authority to settle "up to a certain dollar amount." R. 13. It was Conrail's policy that:

[w]hen a claim appeared likely to involve a settlement amount in excess of [McQuestion's] discretionary authority, Conrail's policy was to present the claim to a committee of Conrail personnel including management, claims agents and legal personnel. The committee evaluated the claim and placed a maximum reasonable settlement value on the claim, based on the committee's evaluation of the facts then known. Once that value was established, as the Claim Agent in charge of the matter, [McQuestion] had sole discretionary authority to settle the claim at any amount up to the reasonable settlement value.

R. 13.

However, McQuestion also stated in his affidavit that:

[i]n negotiating for settlement of a claim, if at any time, facts or arguments were presented to me which persuaded me *that a reasonable settlement value of the claim was higher than the committee's evaluation, I could obtain additional settlement authority by conferring, either in person or by telephone, with members of the claim evaluation committee* and advising them that my assessment of the claim, as the Claim Agent in charge, indicated that an increase in the settlement value was warranted.

R. 14 (emphasis added).

In a second affidavit, McQuestion added, "That amount [$250,000] represented the maximum amount Conrail was willing to pay in settlement of this claim, based on

---

1. Oral argument was held on September 22, 1999.

2. Conrail's lead trial counsel, Ronald J. Waicukauski, was also present.

the information then known to Conrail." R. 32.

Following the settlement conference, the trial court issued the following order:

The court finds that Defendant, [Conrail], failed to comply with the court's order of May 30, 1997, in that said defendant failed to bring someone with full settlement authority to make settlement decision and that said fact was not discovered until after considerable settlement discussion and that said action by [Conrail] made any settlement impossible and wasted everybody's time. Defendant [Conrail] is hereby ordered to appear immediately after the conclusion of this trial and show cause why they shall not be sanctioned for their actions.

R. 5.

On November 4, 1998, while the jury was deliberating on its verdict in the trial, the trial court held a hearing[3] on the order to show cause. Following this hearing, the trial court entered the following sanctions order:

Defendant, [Conrail], appears while the jury is deliberating and offers argument to supplement their Response to Order to Show Cause. The court finds that said response misrepresents what occurred in that *Mr. McQuestion had absolutely no authority to make any settlement offer above what was previously offered and open at the start of the settlement conference.* This fact was not discovered until over two hours into the settlement conference when Conrail's attorney advise "We have no authority whatsoever above what was offered prior to the settlement conference". [sic] Conrail's attorney then described Conrail's claims committee procedure. Conrail's committee was not readily available by phone. The net result of this was that the settlement conference was

a total waste of time. The situation was further aggravated by the fact that just a small percentage movement by Conrail would have probably resulted in the matter being settled.

The court finds that Conrail's actions were arrogant, deceitful and in flagrant disregard of the order of May 30, 1997. The court finds that actual damages should be multiplied by five because of the extreme nature of Conrail's actions. The court sanctions Conrail as follows:

I. Conrail is ordered to pay Plaintiff $3,750.00 for two attorneys at $125.00 per hour for three hours times a multiplier of five.

II. Conrail is ordered to pay the Grant County General Fund $2,250.00 for three hours of court time at $150.00 per hour times a multiplier of five.

R. 15–16 (emphasis added).

Conrail now appeals the trial court's $6,000.00 sanction order.

## Discussion and Decision

### I. Standard of Review

■ Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice. *Hanson v. Spolnik,* 685 N.E.2d 71, 82 (Ind. Ct.App.1997), *trans. denied.* Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Id.* Upon review, we will reverse the trial court's determination only where an abuse of discretion has been shown. *Id.* An abuse of discretion occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

### II. Trial Court's Order

In the present case, we note that the trial court provided Conrail with a sanc-

---

**3.** Although the Record reveals that a discussion took place out of the presence of the jury while it was deliberating, the Record does not contain any documentation of what was said by the court and the parties in this discussion.

Therefore, we hesitate to refer to this discussion as a hearing, but because both Conrail and Martin refer to the discussion as a hearing, we will also refer to the discussion as a hearing to limit confusion.

tions order that cited "Mr. McQuestion had absolutely no authority to make any settlement offer *above what was previously offered* and open at the start of the settlement conference." R. 15 (emphasis added). The dispositive issue in this case is whether the trial court's sanctions can stand when the court's finding was based, in part, on the amount that was offered at the settlement conference. Because the finding was based on how much was, or rather, was not offered at the settlement conference, the trial court's order cannot stand. Further, although the trial court's order was clear and certain in its mandate, there is not sufficient evidence to support the trial court's finding that Conrail willfully disobeyed the order.

### A. *Amount of Offer*

■ The order of contempt was erroneous because a court cannot mandate any particular amount of settlement. The trial court based its finding, in part, on the fact that McQuestion had no authority to make a settlement offer above that which was previously offered. Conrail remained free to value the case as it saw fit, offering nothing at all or any amount beyond that point. Other than persuasion, the court is without authority to order a party to appear at a settlement conference with more money, a larger offer, or for that matter, any offer at all. That is the lesson from *State v. Carter*, 658 N.E.2d 618 (Ind.Ct. App.1995).

In *Carter*, the State's representative at the mediation, Johnson, only had authority to settle the case at a certain amount, and the parties remained $20,000 apart. We stated that "[i]t is not for us to decide whether the State's assessment of the value of the case was reasonable, only that the State, via Johnson, was prepared to settle at some point. That it was not a point to the liking of Carter is of no consequence." *Carter*, 658 N.E.2d at 622. Thus, the trial court cannot by its own order make Conrail value the case at more than what they choose to value it at. As long as the amount that they have chosen

is their absolute final value, and the person present at the settlement conference could have offered that amount, then there would be a representative present with full settlement authority. Thus, to the extent that Conrail was sanctioned because no offer was made above the previous offer of $250,000, the order was improper.

### B. *Clearness of Order—Full Settlement Authority and Willful Violation*

Notwithstanding our resolution of the above issue, and because the issue is one which might arise again, we will address the issue of full settlement authority. We believe the evidence shows that Conrail did not send or have available a person with "full settlement authority;" however, Conrail did not willfully disobey the trial court's order.

■ Before a person can be punished for contempt of a court's order, the trial court must have issued an order commanding the party to do or refrain from doing something. *Meade v. Levett*, 671 N.E.2d 1172, 1181 (Ind.Ct.App.1996). When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willful. *Id.* Orders of a court must be clear and certain so that there can be no question as to what the person must do or not do, and no question regarding when the order is violated. *Martinal v. Lake O' The Woods Club, Inc.*, 248 Ind. 252, 254, 225 N.E.2d 183, 185 (1967).

■ "Full settlement authority" is a phrase that is not difficult to interpret and Conrail knew what the order was mandating. The trial court was ordering that some person, representative, committee, or the like, be present and able to settle the matter, fully and finally, regardless of whether or not $250,000 was, indeed, the full and final amount that Conrail was willing to offer. Conrail, by its own admission, via McQuestion's affidavit, states that he did not have full settlement authority. If certain facts presented themselves to McQuestion, the final settlement offer

could, potentially, have been raised by the committee. Had Conrail decided, fully and finally, that $250,000 was their absolute final offer, then, and only then, McQuestion would have had final settlement authority. That is not the case here, however. There was the lingering possibility that some additional fact could have persuaded McQuestion to call the committee and seek to raise the amount offered from $250,000. As long as there was any possibility that the "so called" maximum reasonable amount the case was valued at could be raised, final authority was not vested in McQuestion.

■ Nonetheless, we do not believe that Conrail willfully disobeyed the order when it sent McQuestion to the settlement conference. McQuestion, *if he felt it was necessary,* could call the committee, the ultimate decision-making authority, in order to settle the matter.[4] It is conceivable that Conrail would believe that McQuestion, with his ability to contact the committee to extend his authority, ultimately did have, if not final authority, at least a means by which to achieve it if necessary. Because not every failure to comply with a court order is a willful violation, there is not sufficient evidence that Conrail willfully disobeyed the order. Thus, although the order was clear in what it was mandating, there was no willful disobedience of the trial court's order.

There is the concern that if "full settlement authority" is held to mean what its plain terms would suggest: a person, committee, appointee, representative, etc. with the ability and power vested in him to make the full and final decision on settling an issue, that businesses would proclaim there is always someone one step higher

that authorizes or actually "makes" the final decision. In its Response to Order to Show Cause, Conrail asserts that "[a]s with all corporations, individual employees are often faced with some limits on their ability to make discretionary decisions. The nature of the corporate structure mandates that individual employees occasionally seek authorization before making a decision they feel is in the company's best interest." R. 10. However, it is the business that has the power to appoint or vest final authority in a person or committee to make that decision. There should be no fear that there is always someone "higher up" when that very company has the right to decide exactly who can raise the bar, and what or how high that final decision can be. The business has the power to choose who makes final decisions; it is the company's responsibility to vest that power in someone or some group when ordered by a court to send, or at least have available, a representative with full or final settlement authority.

Here, Conrail specifically provided in *its* affidavit by McQuestion that "if at any time, facts or arguments were presented to me which persuaded me that a reasonable settlement value of the claim was higher than the committee's evaluation, I could obtain additional settlement authority by conferring either in person or by telephone, with members of the evaluation committee. . . ." R. 30. Thus, Conrail acknowledges that the entity with "full settlement authority" was not available to assist and decide, if necessary. Conrail's representative at the settlement conference had no absolute requirement to call the committee if the facts did not warrant, but the committee was not even available to be contacted should the facts have war-

---

4. We note that the trial court's order states, "Conrail's committee was not readily available by phone." R. 15. Because we hold that the trial court's order was erroneous due to the requirement of a higher offer and sanctions were not proper because of lack of willful disobedience, we will not decide whether the availability of the committee and whether contacting the committee would have resulted

in the fact that Conrail had provided full settlement authority. We would strongly urge in such future situations, regardless of the outcome of a settlement conference or case, that when ordered to appear with "full settlement authority," corporations strictly comply and if the true final authority is not present in person, that the final authority be available to make the final decision.

ranted. Had Conrail decided that under no circumstances would it raise the offer beyond $250,000, then it would have sent the entity with "full settlement authority," but that is not what it chose to do.

### Conclusion

Reversal is warranted because the trial court cannot order a party to appear with more money or make a larger offer. Further, although the trial court's order was clear in its mandate, Conrail did not willfully violate the trial court's order.

Reversed.

FRIEDLANDER, J., concurs.

RILEY, J., concurs in result with opinion.

RILEY, Judge, concurring in result.

I write a separate opinion because I find that the trial court failed to provide Conrail with a clear and certain order of what the term "full settlement authority" meant. I cannot agree with the majority's statement in section II. B. that "full settlement authority" is a phrase that is not difficult to interpret and Conrail knew what the order was mandating.

I would note that the trial court provided Conrail with an order that "counsel and their clients, with full settlement authority" were to appear at the settlement conference. Therefore, the dispositive issue in this case is whether the trial court's order was clear and certain such that Conrail could willfully disobey the court's order. As the majority previously stated, orders of a court must be clear and certain so that there can be no question as to what the person must do or not do, and no question regarding when the order is violated. *Martinal*, 225 N.E.2d at 185.

As I review the trial court's sanction order, I am mindful that the Record must reflect sufficient evidence of the sanctioned parties' willful disobedience of the court's order. My review of the Record does not reveal sufficient evidence to determine that Conrail's actions were in willful disobedience of the trial court's order. The Record merely contains the trial court's orders and fails to include a record of any discussion between the court and the parties regarding the order to bring someone with full settlement authority to the settlement conference. As a result, we can only review the trial judge's discretion from a review of his orders. The trial court ordered Conrail to bring someone to the settlement conference with full settlement authority, but the trial court judge failed to define the term "full settlement authority." The majority wishes to interpret the trial judge's order to mean that the judge was ordering that some person, representative, committee, or the like, be present and able to settle the matter, fully and finally, regardless of whether or not $250,000 was, indeed, the full and final amount that Conrail was willing to offer. I cannot interpret the trial judge's order in this way because I find that the trial judge's order was not clear as to whether "full settlement authority" meant someone with the power to bind Conrail to settle or whether it meant the authority to settle a maximum settlement value, McQuestion's appearance at the settlement conference with authority to settle at the maximum settlement value as assessed by Conrail was reasonable and not in willful disobedience of the court's order. Because the trial court's order was not clear or certain as to provide Conrail with a sense of what the order mandated or when Conrail would be in violation, Conrail could not willfully disobey the order.

As the majority recognizes, Conrail relies on *State v. Carter* for the proposition that "full settlement authority" means someone empowered to enter into settlement for the full value that the defendant is willing to pay. 658 N.E.2d 618 (Ind.Ct. App.1995). However, the majority fails to discuss that this court based its decision in *Carter* on the Colorado Supreme Court case of *Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902 (Colo.1992). In that

case, the Colorado Supreme Court held that the trial court erroneously sanctioned a law firm for not participating in a court-ordered settlement conference in good faith. During the settlement conference, the plaintiffs offered to settle the case for a specified amount, but defense counsel responded that he only had authority to settle for $300, thereby ending the settlement conference. The settlement judge later issued an order that the law firm had acted in bad faith by violating the court's order for a settlement conference and the order that the parties attend the settlement conference with full settlement authority. However, the Colorado Supreme Court rejected the trial court's finding that the law firm lacked settlement authority, holding that the law firm did not lack settlement authority; but instead, the settlement offer was just not adequate in the opinion of the settlement conference judge. *State v. Carter*, 658 N.E.2d at 623 (citing *Halaby*, 831 P.2d at 908). The Colorado Supreme Court further reasoned that "[a]n 'adequate' amount of settlement authority will vary based on the circumstances of each case, and a settlement conference judge should not impose sanctions because, in his opinion, the amount is insufficient." *Id.*

Conrail applies the reasoning in the *Carter* case to the facts surrounding the case at hand. Specifically, Conrail argues that it was not ordered to attend the settlement conference with a representative vested with unlimited settlement authority, and further, it was not ordered to appear with a representative vested with authority to offer more than it had offered at mediation or more than the maximum settlement value as assessed by its settlement committee. Conrail argues that the facts of this case are analogous to the facts of *Carter* and *Halaby*, and therefore, Conrail's representative, McQuestion, did not lack settlement authority. In sum, Conrail contends that the trial judge erred by imposing sanctions because it was not for the trial court to decide the reasonableness of Conrail's assessment of the value of the case, but only that Conrail, via McQuestion, was prepared to settle at some point.

However, the majority finds that McQuestion was not vested with "full settlement authority" as the court order mandated, and also that Conrail's settlement committee was not even available for consultation during the settlement conference. Because I find that the trial judge's order was not clear as to whether "full settlement authority" meant someone with the power to bind Conrail to settle or whether it meant the authority to settle at a maximum settlement value, McQuestion's appearance at the settlement conference with authority to settle at the maximum settlement value as assessed by Conrail was reasonable and not in willful disobedience of the court's order.

Therefore, I agree with the majority that Conrail did not willfully disobey the trial court's order, however, I would hold that the trial court failed to provide Conrail with a clear and certain order of what the term "full settlement authority" meant. From my review of the Record I can only surmise that Conrail believed that "full settlement authority" meant to bring someone with authority to settle the case at the maximum settlement amount as determined by Conrail. Thus, because the Record fails to include sufficient evidence in order for us to determine whether Conrail willfully disobeyed the trial court's order we must reverse the sanction order.