John L. RICHARDSON, Appellant–Respondent,

v.

Susan E. HANSROTE, Appellee–Petitioner.

No. 72A01–0706–CV–288.

Court of Appeals of Indiana.

Feb. 26, 2008.

Rehearing Denied July 2, 2008.

Alison T. Frazier, Dupont, IN, Attorney for Appellant.

Joseph Leon Payne, Austin, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

John L. Richardson ("Father") appeals the trial court's order denying his post-dissolution motion for rule to show cause why Susan E. Hansrote ("Mother") should not be held in contempt. Father asserts three issues on appeal, which we restate as:

1. Whether the trial court erred when it determined that Father has a child support arrearage.

2. Whether errors by the clerk of the court, who mistakenly applied two of Father's child support payments to the wrong account, are attributable to Father.

3. Whether the trial court erred when it determined that a child support obligation paid by an income withholding order is not paid until it is received in the clerk's office where Mother had agreed to an income withholding order.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

The Decree dissolved the marriage of Father and Mother on May 16, 2002. The

parties have three minor children. In the Decree, the dissolution court awarded joint custody of the children to Father and Mother, giving Mother primary physical custody and Father visitation. Regarding child support, the Decree provided, in relevant part:

IT IS FURTHER ORDERED AND DECREED by the Court that [Father] be, and he hereby is, ordered to pay child support for the benefit of the minor children of the parties in the sum of $168.00 per week *to the Clerk of the Scott Superior Court* commencing on the first Friday following the date of this Decree of Dissolution of Marriage and continuing on each and every Friday thereafter until the further order of this Court. . . .

IT IS FURTHER ORDERED AND DECREED by the Court that [Father] be, and he hereby is, found to be in arrears in the payment of child support as set forth in the Provisional Order herein, and that [Father] shall pay the sum of $32.00 per week in addition to current child support until said arrearage is paid in full.

IT IS FURTHER ORDERED AND DECREED by the Court that [Father] be, and he hereby is, awarded the tax exemption for income tax purposes each year for the minor child of the parties, [S.D.R.], *as long as [Father] is current on the payment toward child support as of December 31 of each year* . . . . The parties shall alternate the tax exemption on the minor child of the parties, M.A.R., with [Mother] receiving the tax exemption on even-numbered years commencing with the taxable year 2002, and [Father] receiving the tax exemption on odd-numbered years as long as [Father] is current on the payment to-

ward child support as of December 31 of each year. . . .

Appellant's App. at 8–9 (emphases added).

On June 9, 2005, Father filed a Verified Petition for Modification of Decree of Dissolution of Marriage Regarding Parenting Time, Child Support and Related Issues. On August 25, 2005, the parties executed an agreed modification of the Decree ("Agreed Modification"), under which the parties agreed for child support to be paid by an income withholding order. The Agreed Modification also reduced Father's support obligation, as follows:

By agreement of the parties, [Father's] child support obligation is hereby reduced to ONE HUNDRED FORTY–TWO DOLLARS ($142.00) per week beginning Friday, August 26, 2005. [Father] will continue to pay his child support obligation to the Clerk of the Scott Superior Court until such time that an Income Withholding Order becomes effective. . . .

Appellant's App. at 12. The voluntary income withholding order was entered on September 22, 2005, and Father continued to make child support payments directly to the clerk of the court until the income withholding order took effect. The trial court approved and entered the Agreed Modification on October 7, 2005.

On January 30 or 31, 2006, Mother telephoned Father and informed him that she planned to file her 2005 income tax return the following day, claiming all three of the parties' children as exemptions because Father was in arrears on his child support obligation as of December 31, 2005. Father denied any arrearage, but, upon checking with the clerk of the court the following day, he discovered that the clerk had erroneously credited Father's June 17 and July 8, 2005, payments to another child support account. Father immediately presented his receipt for the June 17,

2005, payment, which he then realized showed that the clerk had erroneously credited the payment to Brian Richardson. The clerk corrected that error at once. Father did not have the receipt for the July 8, 2005, payment, so he immediately made another payment of $168 for July 8. Both the June 17 and the replacement July 8 payments were credited as of February 2, 2006, but the clerk did not correctly credit Father's account for the original July 8, 2005, payment until after completing an audit of Brian Richardson's account.[1]

When Father filed his 2005 tax return and claimed two of the children as tax exemptions pursuant to the Decree, he believed that he was not in arrears as of December 31, 2005. But Mother had already filed her 2005 return, also claiming those children. As a result, the Internal Revenue Service ordered Father to file an amended return and imposed penalties against him.

On January 24, 2007, Father filed a Motion for Rule to Show Cause, seeking to hold Mother in contempt because the Decree provided for Father to claim two children as dependents for 2005 but Mother had claimed those exemptions on her 2005 return. In her reply, Mother asserted that Father was not entitled to any of the tax exemptions because his child support payments were not current as of December 31, 2005. After a hearing, the court entered an order denying Father's motion ("Show Cause Order"), finding that he was $510 in arrears on December 31, 2005. The Court found as follows:

3. In this case there is no evidence that any non-conforming support payments were paid. The Clerk's records in this case show that as of 31 December 2005,

[Father's] support was in arrears in the sum of $510.00.

4. [Father] has asserted that such arrearage was the result of two (2) payments made by him and misapplied by the Clerk's office until 3 January, 2006. Further [Father's] evidence indicated that the Clerk corrected one of the misapplied payments but this did not happen until February 2006. Further [Father] testified that he paid his support current upon being advised by [Mother] of an arrearage.

5. The order in this case is clear that, in order to be entitled to claim the tax exemptions, [Father] must have been current on his support as of 31 December 2005. In order for the Parties to determine if support is current the Parties must be in a position to rely upon the Clerk's records. The Court finds that a support payment is not paid until the same is received by either the County Clerk or the State Central Unit and therefore a payment is not considered made if the payment has been deducted by the Obligor's employer but not yet received by either agency. Of the two (2) Parties to this action, [Father], being the obligor, was in the better position to determine if the Clerk's records were correct, and if not, then have them corrected to reflect the actual payment status as of December 31st of any year.

6. For reasons set forth above, even if the misapplied payments and the payment deducted by his employer, would have resulted in [Father's] support being current as of 31 December 2005, he is not entitled to the relief he seeks herein.

---

1. The parties do not indicate whether, after the clerk completed the audit and credited Father's account accordingly, Father was reimbursed for the extra July 8 payment he had made in February 2006.

7. The Court finds that, as of 31 December 2005, [Father's] support arrearage was in the sum of $510.00. . . .

Appellant's App. at 33–34. Father now appeals.

## DISCUSSION AND DECISION

### Standard of Review

 Father argues that the trial court should have found Mother in contempt for claiming tax exemptions for two of the children for the 2005 tax year. Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice. *Conrail v. Estate of Martin,* 720 N.E.2d 1261, 1264 (Ind.Ct.App.1999). Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Id.* Upon review, we will reverse the trial court's determination only where an abuse of discretion has been shown. *Id.* An abuse of discretion occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

 In ruling on Father's motion for rule to show cause, the court entered findings of fact and conclusions sua sponte. Therefore, we apply a two-tiered standard of review. *Vega v. Allen County Dep't of Family & Children (In re J.V.),* 875 N.E.2d 395, 402 (Ind.Ct.App.2007). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); *Perrine v. Marion County Office of Child Servs.,* 866 N.E.2d 269, 273 (Ind.Ct.App.2007). In our review, we first consider whether the evidence supports the factual findings. *Perrine,* 866 N.E.2d at 273. Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.; Quillen v. Quillen,* 671 N.E.2d 98, 102

(Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Perrine,* 866 N.E.2d at 273. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. *Perrine,* 866 N.E.2d at 274. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.*

### Issue One: Provisional Arrearage

 Father contends that the trial court abused its discretion when it refused to find Mother in contempt of the Decree and Agreed Modification. The court's decision was based, at least in part, on its finding that Father was in arrears as of December 31, 2005. Father argues that the evidence is insufficient to support the determination that he had accrued a child support arrearage. In particular, Father contends that the trial court should not have included a provisional arrearage in its arrearage calculation. We must agree.

The trial court relied on the clerk's records to determine that Father was in arrears in child support as of December 31, 2005, as indicated by the court's findings in the Show Cause Order:

3. In this case there is no evidence that any non-conforming support payments were paid. *The Clerk's records in this case show that as of 31 December 2005, [Father's] support was in arrears in the sum of $510.00.*

\* \* \*

5. . . . In order for the Parties to determine if support is current the Parties must be in a position to rely upon the Clerk's records. . . .

* * *

7. The Court finds that, as of 31 December 2005, [Father's] support arrearage was in the sum of $510.00....

Appellant's App. at 33–34 (emphasis added). Thus, to determine whether the evidence supports the trial court's finding that Father had a $510 arrearage as of December 31, 2005, we must review the clerk's records and any other evidence.

To that end, we first consider whether the arrearage found by the trial court includes a provisional arrearage and, if so, whether the evidence supports the finding that there was a provisional arrearage. In that regard, Mother requests that we:

note[ ] that at the time of the decree of dissolution Father was in arrears on the payment of his child support obligation. This fact was noted by the order of the trial court that found the father to be in arrears and ordered him to pay an additional $32.00 per week until he became current.

Appellee's Brief at 7 (citing Appellant's App. at 8). But at the hearing on Father's Motion, Mother and Father agreed that there was no arrearage at the time of the Decree:

Mother's Counsel: Your Honor, there was an agreed entry entered in this case as a result of [an August 2005] hearing. What may have been brought up during the hearing is irrelevant. There was no finding of any kind of a support arrearage at that time, nor [were] there any petitions

filed in regards to rules to show cause or anything else.

Court: It goes back to the last time there was a finding, which apparently is in the decree.

Father's Counsel: Your Honor, in the decree there is no finding of an arrearage. There is no figure.

Court: Then you start off at zero.

Father's Counsel: That's right.

Court: If there's not been a finding since then, then that's where you go back to. There's nothing in this October 2005 order that says one way or the other about an arrearage.

Mother's Counsel: No, there's not.

Court: It's not even mentioned.

Mother's Counsel: No, it's not.

Transcript at 32–33.

In the Decree, the dissolution court found that Father was in arrears in the payment of child support, and it ordered him to pay $32 per week in addition to child support until the arrearage was paid in full. But the trial court did not state the amount of the arrearage in the Decree. Without any evidence of the provisional arrearage that had accrued as of the date of Decree, we cannot determine the amount of the arrearage, if any, that remained unpaid as of December 31, 2005. Nor could the trial court make that finding. Thus, to the extent that any provisional arrearage is included in the trial court's finding that Father was $510 in arrears as of December 31, 2005, that finding is unsupported by the evidence.[2]

---

**2.** Although we cannot determine the factual issues of the amount of the provisional arrearage, if any, or what the arrearage is comprised of, it appears that the court may have reached $510 by adding the two support payments that were misapplied by the clerk ($168 each); the payment received January 3, 2006, under the income withholding order ($142);

and a balance of $32. The trial court does not explain its computation. However, we note that $32 is also the amount that Father was ordered in the Decree to pay each week toward a provisional arrearage and that the clerk's record shows a series of weekly $200 payments ($168 plus $32) plus a $192 payment ($168 plus $24) through June 6, 2002.

■ We also consider the trial court's related finding that "[t]he Clerk's records in this case show that as of 31 December 2005, [Father's] support was in arrears in the sum of $510.00." Appellant's App. at 33. The clerk is not responsible for calculating arrearages. To the contrary, the clerk merely maintains a record of payments received. *See* Ind.Code § 31–16–9–2 (requiring clerk to maintain records listing amount of child support payments, dates when payments are made, names and addresses of parties affected by child support orders, and other data immaterial to this case). The clerk's records are a ledger, which may not always be conclusive and may require extrinsic evidence to be fully understood. Here, the calculation of an arrearage requires evidence of whether Father was in arrears on the date of the Decree. But whether Father was in arrears on the date of the Decree is not reflected in the clerk's records because the clerk's records do not show Father's child support balance, if any, on the date of the Decree; the amount of support ordered; the payment schedule; or that two payments were misapplied to another man's account, as discussed below in Issue Two. Thus, the trial court's finding that the clerk's records showed Father to be $510 in arrears is also clearly erroneous.

■ The trial court's findings did not refer to Mother's Exhibit B, which was a printout of Mother's arrearage calculation computed by arrearage and interest calculator software. Mother did not testify at the show cause hearing, but her trial counsel offered Exhibit B into evidence at the close of Father's case. In so doing, Mother's counsel stated: "I have prepared an Exhibit # B, which is a complete compilation of the support payments that have been paid in this matter." Transcript at 37. Father's counsel objected to the admission of the exhibit, arguing that the compilation of support history predated the Decree and, therefore, might include a provisional arrearage. The trial court ultimately admitted Exhibit B as a "demonstrative exhibit," Transcript at 39, meaning that it was admitted only for purposes of illustration and clarification, *Wise v. State*, 719 N.E.2d 1192, 1196 (Ind.1999). Thus, Exhibit B could not have been the proper basis for the finding of any arrearage because its calculation is based in part on child support payments made before the Decree was entered.

■ In sum, the trial court's findings that Father was $510 in arrears on December 31, 2005, and that the clerk's records showed that arrearage are not supported by the evidence to the extent that the arrearage includes a provisional arrearage. Thus, we must reverse and remand this case to the trial court to determine the amount of Father's arrearage, if any. *See Dedek v. Dedek*, 851 N.E.2d 1048, 1051 (Ind.Ct.App.2006) (remanding for a determination of father's child support arrearage after determining whether lump sum Social Security Disability payment made to children should be attributed to father's child support obligation). In so doing, we note that Mother argues on appeal that a provisional arrearage existed when the Decree was entered. But at the Show Cause hearing, the parties agreed through counsel that no arrearage existed as of the date of the Decree. A party cannot maintain one position before the trial court and another position on appeal. *S & B Constr., LLC v. Old Fort, LLC*, 826 N.E.2d 32, 36 (Ind.Ct.App.2005) (judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with a position previously asserted), *trans. denied.* Thus, on remand, Mother is estopped to argue that Father had accrued an arrearage as of the date of

the Decree, and the court may not include any provisional arrearage in its determination.

Although we reverse the Show Cause Order and remand to the trial court, we will address the other two issues raised by Father, namely, (1) whether the clerk's erroneous allocation of two of Father's child support payments is attributable to Father and (2) whether Father should be held accountable for the payment by an income withholding order that arrived after December 31, 2005, issues that are likely to recur on remand.

### Issue Two: Clerk Error

Father contends that he timely made his June 17, 2005, and his July 8, 2005, child support payments to the clerk of the court but that the clerk misapplied those payments to another man's child support account. Father maintains that the clerk's error should not be chargeable to him. We must agree.

■■■■ "Upon entering an order for support in . . . a dissolution of marriage decree under IC 31–15–2 . . . the court shall require that support payments be made through the clerk of the circuit court as *trustee for remittance* to the person entitled to receive payments. . . ." Ind. Code § 31–16–9–1(1) (emphasis added). Thus, the clerk, as the "trustee for remittance," receives child support payments on behalf of the custodial parent. *See id.* But one paying money to an agent authorized to receive it is entitled to credit for the payment as if the payment were made directly to the creditor. *Mutual Hosp. Servs., Inc. v. Burton,* 695 N.E.2d 641, 644 (Ind.Ct.App.1998) (citing *Helms v. Am. Security Co. of Ind.,* 216 Ind. 1, 22 N.E.2d 822, 824 (1939)).

■■■ We agree with the trial court's finding that the parties should be able to rely on the clerk's child support records. But, as noted above, the clerk is not charged with calculating arrearages. And, as illustrated in the case before us, the clerk occasionally makes mistakes. Thus, the records are not conclusive and are subject to impeachment. Here, Mother does not deny that Father paid his child support payments directly to the clerk on June 17 and July 8, 2005. Nor does she deny that the clerk misapplied those payments to another man's child support account.

■■■ When Father made the June 17 and July 8, 2005, child support payments, the clerk accepted those payments as trustee for remittance on behalf of Mother. *See* I.C. § 31–16–9–1. Thus, at the time he made those payments to the clerk, Father was entitled to credit for them as if they had been made directly to Mother.[3] *See Burton,* 695 N.E.2d at 644. The clerk's failure to credit those payments to Father's child support ledger is not chargeable to Father. As such, the evidence does not support the trial court's finding that Father was in arrears on December 31, 2005, to the extent that arrear-

**3.** We note that the trial court also found that "a support payment is not paid until the same is *received* by either the County Clerk or the State Central Unit. . . ." Appellant's App. at 15 (emphasis added). That finding is included in a paragraph discussing payments made by income withholding order. But, by finding that Father was in arrears for the misapplied payments, the court apparently found that payments made directly by Father to the clerk were not actually paid until they were applied by the clerk to Father's account. The court's findings do not explain the reason for the distinction between direct payments by Father and payments by income withholding order, nor can we discern any. As noted above, we conclude that payments made to the clerk directly by Father are paid when received by the court clerk.

age is based on the June 17 and July 8, 2005, child support payments.

## Issue Three: Income Withholding Order Payments

Father also contends that the trial court erred when it determined that his child support obligation paid by an income withholding order was not paid until it was received in the clerk's office. As a result, the trial court found that Father was in arrears on December 31, 2005, because the payment due on the last Friday of 2005 was not received in the clerk's office until the next business day, Tuesday, January 3, 2006.[4] Whether the timeliness of a payment made by an income withholding order is attributable to the child support obligor is a matter of first impression.

The Decree ordered Father to pay $168 as child support every Friday to the clerk of the court. In the Agreed Modification, Mother and Father agreed to reduce Father's weekly child support obligation to $142, to be paid by an income withholding order. The income withholding order was dated September 22, 2005, and Father continued to pay support directly to the clerk until the income withholding order took effect. Father's employer then began making the weekly payments to the Indiana Child Support Bureau through the clerk of the court.[5]

 Payment by an income withholding order is similar to payment ordered in garnishment proceedings. From the day of the service of a summons in a garnishment proceeding, a garnishee-de-

fendant is accountable to the creditor for the amount of money, property, or credits in the garnishee's possession or due and owing from the garnishee to the debtor defendant. Ind.Code § 34–25–3–3. Likewise, the employer subject to an income withholding order is liable to the child support recipient from the effective date of the income withholding order. As such, Father's employer, as the income payor, was a de facto trustee for remittance of Father's child support to the clerk. See Ind.Code § 31–16–15–7.5 (setting out the duties of the income payor, including payment of child support as directed by income withholding order).

 Father's last child support payment was due on Friday, December 30. But the clerk did not receive the payment until Tuesday, January 3, 2006. Mother and Father had agreed that child support would be paid by an income withholding order, and Father did not control the date that his employer sent his child support payments to the clerk of the court. These payments were made by EFT (electronic funds transfer). And without evidence of collusion between a child support obligor and the obligor's employer, the issuance of an income withholding order removes from the obligor's control the timing of child support payments. There is no evidence of such collusion here. We conclude that Father is not chargeable with the lateness of the last 2005 support payment.

Our opinion in Nell v. Tracy, 459 N.E.2d 432 (Ind.Ct.App.1984), is instructive. In Nell, an estate, by its attorney, sent an inheritance tax payment by certified mail,

4. New Years Day, January 1, is a legal holiday. Ind.Code § 1–1–9–1(a). In 2006, January 1 fell on a Sunday, so the legal holiday was celebrated on Monday, January 2, 2006. Ind.Code § 1–1–9–1(b). Thus, the first business day after Saturday, December 31, 2005, was Tuesday, January 3, 2006.

5. Child support payments made to the Bureau are actually made to the circuit court clerk. Ind.Code §§ 12–17–2–5 (Bureau administers Title IV–D of the federal Social Security Act in Indiana); 12–17–2–27 (circuit court clerk receives support money assigned to the state and paid under the terms of court order in the clerk's jurisdiction).

return receipt requested, to the Indiana Department of State Revenue on April 28, 1981. "For some unknown reason, not the fault of the Estate, the check was not received by the Department of State revenue until May 4, 1981, four days past the due date." *Id.* at 433. When the Department refused to issue a receipt for the payment, the estate sought mandamus and a declaratory judgment. The trial court denied relief, but this court reversed, holding:

> The Estate did what any reasonable person versed in normal business practices would have done to make timely payment of the inheritance tax on or before the due date. The check was mailed, certified mail with return receipt requested, two days prior to the due date. In the ordinary course of the mails, it should have been received the next day—one day before the due date. The late delivery was not occasioned by any act or fault of the Estate, the taxpayer.

*Id.* at 434–35. The court also noted that the purpose of the penalty and interest provisions, compliance with the tax laws and prompt payment of taxes, would not be enhanced by adoption of the view that payment was not made until received. *Id.* at 435.

The reasoning in *Nell* applies equally to the case before us. Father did everything he was supposed to do and could do to assure that his child support payments were timely made. He agreed to payment by an income withholding order, at which point he lost control over the timing of his payments. The payment at issue was received by the clerk only one business day late. We agree with the trial court that as a general matter a support payment is not considered made where the payment has been deducted by the obligor's employer but not yet received by the clerk. Here, however, Mother agreed to payment by an income withholding order.

Therefore, she is estopped and cannot be heard to complain that Father's payment, which was withheld in 2005, was not timely made.

We agree with the trial court that Father was in the "better position to determine if the Clerk's records were correct." Appellant's App. at 33–34. But that does not mean that Father was in control of when payments made by an income withholding order would reach the clerk. Nor do we think Father must check with the clerk near the close of business on the last child support due date each year to assure that the year's final payment by income withholding has arrived. As such, on the facts of this case, we conclude that the one business day delay in the payment that was due on December 30, 2005, is not attributable to Father.

And to the extent the court found that Father was in arrears as of December 31 because of the late payment by income withholding order, such a finding is also error. Indiana Trial Rule 6(a) provides, in relevant part:

> *In computing any period of time prescribed ... by order of the court, ...* the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is ... a Saturday.... In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed.

(Emphasis added.)

Here, the Decree awarded Father tax exemptions for the children as long as he was current in child support on December 31 each calendar year. In 2005, December 31 fell on a Saturday. Thus, under Trial Rule 6(a)(1), Saturday, December 31, 2005, was not the last day of the period for determining whether Father was current in his child support obligation. The next

day that was not a Saturday, a Sunday, a legal holiday, or a day on which the office was closed was Tuesday, January 3. Father's last child support payment for 2005 was received on Tuesday, January 3, 2006. Thus, by application of Trial Rule 6(a)(1), the timing of that payment was not a proper basis for finding that Father was not current in his child support as of December 31, 2005.

## Conclusion

We conclude that the trial court's findings that Father was in arrears as of December 31, 2005, and that the clerk's records show such an arrearage are not supported by the evidence. Thus, we must reverse and remand for the trial court to reconsider those issues and to enter a new order on Father's motion for rule to show cause. We note that the trial court also found:

> For reasons set forth above, even if the misapplied payments and the payment deducted by his employer, would have resulted in [Father's] support being current as of 31 December 2005, he is not entitled to the relief he seeks herein.

Appellant's App. at 34. We cannot discern from this entry whether the court denied relief because there was an arrearage or whether the court found that Mother had not willfully disobeyed the Decree provision allocating tax exemptions for the children. On remand, the court should issue new findings not inconsistent with this opinion and revisit the ultimate issue of whether Mother was in contempt of the Decree.

Reversed and remanded with instructions.

BAILEY, J., and CRONE, J., concur.